Leigh T. Goddard (NV Bar No. 6315)
Daniel I. Aquino (NV Bar No. 12682)
Tara U. Teegarden (NV Bar No. 15344)
MCDONALD CARANO LLP
100 W. Liberty St. Tenth Floor
Reno, NV  89501
Telephone:  775-788-2000
lgoddard@mcdonaldcarano.com
daquino@mcdonaldcarano.com
tteegarden@mcdonaldcarano.com

*Attorneys for KPG Investments, Inc.*
*and Kendalle Getty*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| KPG INVESTMENTS INC., a Nevada corporation; KENDALLE GETTY, an individual,<br><br>       Plaintiffs,<br><br>  v. | Case No.:<br>3:22-cv-00236-ART-CLB |
| MARLENA SONN, an individual; AND DOES 1-20,<br><br>       Defendant.<br>_____/ | |
| MARLENA SONN,<br><br>       Plaintiff,<br><br>  v. | Consolidated with:<br>3:22-cv-00323-ART-CLB |
| KENDALLE P. GETTY, as Trustee of the Pleiades Trust and as an individual, KPG INVESTMENTS, INC., as Trustee of the Pleiades Trust, ALEXANDRA SARAH GETTY, as Trustee of the Pleiades Trust and as an individual, ASG INVESTMENTS, INC., as Trustee of the Pleiades Trust, MINERVA OFFICE MANAGEMENT, INC., and ROBERT L. LEBERMAN,<br><br>       Defendants.<br>_____/ | **FIRST AMENDED COMPLAINT** |

McDONALD CARANO<br>100 WEST LIBERTY STREET, TENTH FLOOR • RENO, NEVADA 89501<br>PHONE 775.788.2000 • FAX 775.788.2020

KPG Investments Inc. ("KPG") and Kendalle Getty ("Kendalle")[1] (collectively "Plaintiffs"), by and through their counsel of record, the law firm of McDonald Carano LLP, hereby complain and allege against Marlena Sonn ("Sonn") as follows:

**PARTIES**

1.     KPG is, and at all times relevant hereto was, a corporation organized under Chapter 78 of the Nevada Revised Statutes and existing under the laws of the State of Nevada.

2.     Kendalle is currently a resident of the State of California.

3.     Upon information and belief, Sonn is, and at all times relevant hereto was, a resident of the State of New York.

4.     Defendant Alexandra Sarah Getty ("Sarah") is currently a resident of the State of California.

5.      Upon information and belief, Defendant Robert L. Leberman ("Leberman"), as President of Minerva Office Management, is, and at all times relevant hereto was, a resident of the State of California.

6.     Upon information and belief, ASG Investments, Inc. ("ASG Investments") is, and at all times relevant hereto was, a corporation organized under Chapter 78 of the Nevada Revised Statutes and existing under the laws of the State of Nevada.

7.     Upon information and belief, Minerva Office Management, Inc. ("Minerva") is, and at all times relevant hereto was, a corporation organized under Chapter 78 of the Nevada Revised Statutes and existing under the laws of the State of Nevada.

**JURISDICTION AND VENUE**

8.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1332 providing for diversity jurisdiction over the claims alleged herein as this matter is between citizens of different states and the amount in controversy exceeds $75,000.00.

---

[1] Kendalle is referred to by her first name to avoid confusion with her sister Alexandra Sarah Getty, who is also a party to this action.

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

McDONALD CARANO

9.     Venue is proper under 28 U.S.C. § 1391(c)(2), because a substantial part of the events giving rise to Kendalle and KPG's claims occurred in Washoe County, Nevada.

10.     Kendalle, on behalf of KPG, entered into an at-will employment agreement with Sonn in Washoe County, Nevada, and a dispute has arisen with respect to the performance of Sonn's obligations, including her breach of the employment agreement's confidentiality provision, and the exercise of her fiduciary duties as an officer of KPG.

11.     By virtue of the allegations set forth above, jurisdiction and venue are proper in this Court.

## GENERAL ALLEGATIONS

12.     The Pleiades Trust was established for the benefit of various individuals, including Kendalle.

13.     There are a number of trustees of the Pleiades Trust, including KPG Investments Inc., of which Kendalle is the President.

14.     On November 1, 2015, Sonn and KPG entered into an at-will employment agreement ("Employment Agreement") whereby Sonn would serve as the Vice President of Plaintiff KPG.[2]

15.     The Employment Agreement states, in relevant part: "In the performance of Employee's duties under this Agreement, Employee shall adhere to such employment standards, ethical practices, and standards of care and competence as are customary for an employee holding a similar position as a vice president of a corporation serving as a trustee to a family trust."

16.      The Employment Agreement contains the following confidentiality provision: "Employee acknowledges the Corporation's right and title to all proprietary materials which constitutes all materials used in the Corporation's business, including financial information and reports relating to any trust for which the Corporation may serve as trustee and agrees not to disclose any such material to any third party except in the

---

[2] *See* Exhibit 1.

McDONALD CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

1    course of the duties of Employee on behalf of the Corporation or as may be required by

2    court order or lawful subpoena, after reasonable notice to the Corporation."

3        17.    Sonn served as a corporate officer of KPG and is bound by the Employment

4    Agreement's confidentiality provision.

5        18.    Sonn is a Certified Financial Planner, whose responsibilities to KPG

6    included managing investments and providing financial advice.

7        19.    During the time period that Sonn was employed as KPG's Vice President,

8    she also served as a personal financial advisor to Kendalle.

9        20.    Sonn was employed in a similar fiduciary capacity by another trustee of the

10   Pleiades Trust during this time period.

11       21.    In mid-to-late 2017, Sonn urged and requested that Kendalle increase

12   Sonn's compensation for her services as Vice President of KPG.

13       22.    Thereafter, Kendalle's legal counsel prepared a document reflecting a

14   schedule for bonus payments to Sonn (the "Draft Incentive Award Letter").  On October

15   18, 2017, legal counsel for Kendalle sent the Draft Incentive Award Letter to Sonn.

16       23.    The Draft Incentive Award Letter (prepared by Kendalle's legal counsel)

17   stated that Sonn would receive, upon the specified triggering events, two payments, each

18   of 0.00125% of the after-tax amounts received by Kendalle from the Pleiades Trust.

19       24.    After receiving the Draft Incentive Award Letter from Kendalle's legal

20   counsel, Sonn did not address the matter further with counsel.  Instead, Sonn, without the

21   knowledge of Kendalle's legal counsel, caused the letter to be revised to increase the

22   amount of money she would receive.  Specifically, while the Draft Incentive Award Letter

23   stated Sonn would receive two installments of 0.00125% of the total after-tax distribution

24   to Kendalle from the Pleiades Trust, Sonn increased this percentage to two installments

25   of 0.00375%.

26       25.    On or about November 10, 2017, Kendalle, on behalf of KPG, executed the

27   Incentive Award Letter as revised by Sonn (the "Incentive Award Letter").[3]  The Incentive

[3] *See* Exhibit 2.

McDONALD CARANO
2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

Award Letter stated that Sonn would receive a one-time cash bonus (the "First Incentive Bonus") at the time of any distribution of funds to Kendalle from the Pleiades Trust in excess of $25 million, equal to 0.00375% of the after-tax distribution.  The Incentive Award Letter further stated that on the date of the final distribution of funds to Kendalle from the Pleiades Trust, Sonn would receive a one-time cash bonus (the "Second Incentive Bonus") equal to 0.00375% of all after-tax distribution received after payment of the First Incentive Bonus.

26.     The Incentive Award Letter, which Kendalle initially prepared in conjunction with advice from her legal counsel, contained important safeguards to ensure consistency with the best interests of KPG and Kendalle.

27.     Specifically, the Incentive Award Letter stated that Sonn would not receive any payment if she did not remain employed by KPG at the time of any applicable payment date.  This requirement was vital to incentivize Sonn to adequately perform her responsibilities and act in the best interests of KPG and Kendalle, so that she would remain employed through the applicable payment dates.

28.     The Incentive Award Letter also conditioned payment of any bonuses to Sonn on Kendalle's receipt of funds, after deduction of applicable taxes, from the Pleiades Trust.  This requirement was vital to ensure that KPG did not become liable to Sonn for sums it had not yet received, particularly given that the Pleiades Trust contained investments, subject to market volatility and risk.

29.     In or around January 2021, Sarah, who had employed Sonn in a similar fiduciary capacity, terminated Sonn's employment.

30.     Shortly thereafter, Sonn (realizing she would lose the Incentive Bonuses if Kendalle also terminated her employment) formed a plan to convince Kendalle to remove the safeguards protecting the interests of KPG and Kendalle set forth in the Incentive Award Letter.

31.     In or around early March 2021, Sonn requested payment of an additional bonus amount from Kendalle.

32.     In or around early March 2021, Sonn unilaterally drafted a Second Incentive Award Letter, purporting to modify the terms of the initial Incentive Award Letter.[4] Kendalle had no role in drafting the Second Incentive Award Letter.

33.     On or about March 14, 2021, Sonn presented Kendalle with the Second Incentive Award Letter and requested Kendalle sign the letter.

34.     In presenting the Second Incentive Award Letter and requesting Kendalle sign the letter, Sonn falsely represented to Kendalle that the terms of the Second Incentive Award Letter were fair, justified, and in the best interests of KPG and Kendalle.

35.     Contrary to Sonn's representations, the Second Incentive Award Letter was not fair, justified, or in the best interests of KPG and Kendalle.

36.     The original Incentive Award Letter calculated Sonn's potential bonus as a percentage of the portion Kendalle would receive from the Pleiades Trust, after the deduction of applicable taxes.  However, the Second Incentive Award Letter drafted by Sonn calculated Sonn's potential bonus as a percentage of the entire Pleiades Trust (not just Kendalle's share), before any tax deductions, totaling over $1 billion, thus drastically increasing Sonn's compensation.  The Second Incentive Award Letter provided that Sonn's total Incentive Award would be $2.5 million.

37.     In addition to unilaterally inflating her bonus, Sonn also removed the safeguards present in the original Incentive Award Letter.

38.     The Second Incentive Award Letter removed the safeguard in the original Incentive Award Letter stating that Sonn would not receive any payment if she was not still employed by KPG at the time of any applicable payment date.  Rather, Sonn drafted the Second Incentive Award Letter so that she would be guaranteed her inflated $2.5 million even if she were terminated prior to applicable payment dates.  This modification benefitted Sonn's personal interests, to the detriment of KPG and Kendalle.

39.     Sonn drafted the Second Incentive Award Letter with an acceleration clause stating that, if Sonn's employment were terminated, regardless of the reason for

---

[4] *See* Exhibit 3.

McDONALD CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

termination, payment of the entire $2.5 million would be due within 30 days of termination. While the original Incentive Award Letter incentivized Sonn to adequately perform her responsibilities and act in the best interests of KPG and Kendalle (and thus remain employed through the applicable payment dates), Sonn's modified Second Incentive Award Letter did the opposite.  It incentivized Sonn to perform poorly or against the best interests of KPG and Kendalle so that Defendant Sonn's employment would be terminated, thus accelerating her (now guaranteed) payment.   This modification benefitted Sonn's personal interests, to the detriment of KPG and Kendalle.

40.     The Second Incentive Award Letter removed the safeguard in the original Incentive Award Letter conditioning payment of any bonuses to Sonn on Kendalle's receipt of funds from the Pleiades Trust.  Instead, the Second Incentive Award Letter provided Sonn would receive three bonus payments of $833,333 each, which would be made to Sonn on March 31, 2021 (within weeks of Sonn presenting the Second Incentive Award Letter to Kendalle), March 31, 2022, and March 31, 2023, or, alternatively, within 30 days of Sonn's termination of employment.

41.     While the original Incentive Award Letter protected the interests of KPG and Kendalle by ensuring KPG did not become liable to Sonn for sums it had not yet received from the Pleiades Trust, the Second Incentive Award Letter removed this critical safeguard.  The Second Incentive Award Letter not only allowed, but encouraged, Sonn to create a situation where KPG would become liable to pay Sonn sums that KPG had not received from the Pleiades Trust.  Sonn's removal of this safeguard was particularly egregious, since the actual amounts KPG and Kendalle would receive were subject to volatility of investments and applicable taxes.   This modification benefitted Sonn's personal interests, to the detriment of KPG and Kendalle.

42.     Sonn was initially provided a copy of the Draft Incentive Award Letter in 2017 via an email from Kendalle's legal counsel.  Thus, Sonn was well aware that the terms of the Draft Incentive Award Letter were prepared in 2017 by legal counsel for Kendalle and KPG, and that Kendalle and KPG had received legal advice in connection with that agreement.

43. Sonn was aware that Kendalle and KPG had independent counsel retained that could advise on the propriety of executing the Second Incentive Award Letter, and whether such action was in the best interests of Kendalle and KPG.

44. Despite this knowledge, Sonn pressured Kendalle to sign the Second Incentive Award Letter and did not suggest to Kendalle or KPG that their legal counsel be consulted in connection with the decision to execute the Second Incentive Award Letter.

45. Instead, Sonn actively discouraged Kendalle and KPG from consulting legal counsel in connection with the decision to execute the Second Incentive Award Letter. Sonn falsely told Kendalle that it was not necessary for Kendalle to speak to a lawyer about the Second Incentive Award Letter.

46. Between March 14, 2021 and March 17, 2021, Sonn falsely represented to Kendalle that the Second Incentive Award Letter was a "standard" document that served only to corroborate and substantiate the terms of the original Incentive Award Letter.

47. Between March 14, 2021 and March 17, 2021, Sonn falsely represented the nature of the amount of her bonus under the Second Incentive Award Letter, which was in fact a percentage of the total Pleiades Trust.

48. When Sonn presented Kendalle with the Second Incentive Award Letter and requested Kendalle sign the letter on or about March 14, 2021, Sonn was aware that Kendalle was experiencing extremely stressful issues in her personal life.  In addition to these issues, Sonn was aware that the anniversary date of the death of Kendalle's close family member was occurring in this immediate time period.

49. Sonn expressed orally to Kendalle that the amount to which Kendalle would commit by signing the Second Incentive Award Letter was $2 million, when in fact the commitment stated in the Second Incentive Award Letter is $2.5 million.

50. Kendalle initially expressed to Sonn that the amounts Sonn was requesting (which Kendalle believed to be $2 million based on the discussion with Sonn) were quite steep, and asked for time to think about the request.

51. Sonn did not respect Kendalle's request, and instead proceeded to pressure Kendalle, via oral conversations and written communications, to execute the Second

McDONALD CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

Incentive Award Letter and authorize its terms on behalf of KPG.  Sonn repeatedly expressed to Kendalle that she needed to hurry and sign the Second Incentive Award Letter.

52.    Sonn advised Kendalle that everyone else in Kendalle's life was against Sonn, and discouraged Kendalle from allowing anyone else to review the Second Incentive Award Letter.

53.    Sonn was aware of Kendalle's personal circumstances at the time that rendered Kendalle vulnerable to such pressure.

54.    Prior to March 2021, Sonn befriended Kendalle and gained her trust so that Kendalle would not question Sonn's advice or motives.  As a result of these efforts over the years, Kendalle trusted Sonn unconditionally at that point.

55.    Sonn had access to all of Kendalle's personal and trust accounts.  Sonn assisted Kendalle with purchasing her residence.  Sonn advised Kendalle on how she should vote on all trust investments and related matters, and Kendalle came over the years to unconditionally trust, accept, and depend upon all of Sonn's recommendations.

56.    Sonn leveraged this position of trust and dependence in pressuring Kendalle to quickly sign the Second Incentive Award Letter.

57.    As a result of Sonn's pressure to execute the Second Incentive Award Letter, Kendalle executed the Second Incentive Award Letter on behalf of KPG on March 17, 2021, just three days after Sonn presented the document to Kendalle.

58.    Kendalle did not have any reason to believe that her execution of the Second Incentive Award Letter was inappropriate or unwarranted due to Sonn's representations that the terms of the Second Incentive Award Letter were fair, justified, and in the best interests of KPG and Kendalle.

59.    Having successfully coerced Kendalle into executing the Second Incentive Award Letter, Sonn immediately took steps to secure payment of funds.  On March 25, 2021, Sonn emailed KPG's Secretary and Treasurer Francis Nash (now deceased) to demand payment of her first bonus award.  Sonn was aware that Mr. Nash had been suffering from a medical condition.  Upon discovering that Mr. Nash was still sick, Sonn

McDONALD CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

requested that Mr. Nash ignore his other responsibilities and focus his limited energy on processing her bonus payment, stating: "Rather than sending the February financial statements, please save your energy to take care of making the manual payment on ADP's website."

60.     As a result of Sonn's pressuring, KPG made the first bonus payment of $833,333 to Sonn on or about March 31, 2021.

61.     While both the original Incentive Award Letter and the Second Incentive Award letter required Sonn to execute a written release of claims against KPG and its affiliates prior to receiving any payments, upon information and belief Sonn obtained this payment without providing such a release.

62.     Neither the original Incentive Award Letter nor the Second Incentive Award letter altered Sonn's confidentiality duties under the Employment Agreement.

63.     Following Kendalle's execution of the Second Incentive Award Letter, various interested individuals associated with Kendalle learned of the Second Incentive Award Letter's terms.  These individuals flagged the terms of the Second Incentive Award Letter and informed Kendalle that the terms were, in fact, unusual.

64.     Thereafter, Kendalle realized that Sonn had taken advantage of their relationship and coerced Kendalle to execute a document that was not in her best interests, or the best interests of KPG.  Given that Sonn had breached her relationship of trust in this manner, Kendalle could no longer permit Sonn to continue providing her services in either her capacity as Vice President of KPG or as a personal financial advisor to Kendalle.

65.     On November 30, 2021, Sonn was notified that her employment with KPG, as well as her relationship providing personal financial planning services to Kendalle, was terminated.

66.     On March 17, 2022, Kendalle and KPG initiated an action in Washoe County District Court, entitled *KPG Investments, Inc. and Kendalle Getty v. Marlena Sonn*, Case No. CV22-0444, asserting claims against Sonn for, *inter alia,* breach of fiduciary duty as an officer of KPG, and fraudulent misrepresentation relating to the true

nature of the Second Incentive Award Letter.  Notably, Kendalle and KPG submitted redacted copies of the Employment Agreement and Incentive Letters, along with a motion to seal the documents.   Before the Second Judicial District Court ruled upon the Motion to Seal, Sonn removed the case to the United States District Court for the District of Nevada on May 26, 2022, and unilaterally disclosing the state court Complaint and unredacted copies of the exhibits with her notice of removal.

67.    On May 11, 2022, two months after Kendalle and KPG initiated their action, Sonn filed suit against Kendalle and KPG in the U.S. District Court Eastern District of New York, entitled *Sonn v. Getty et al*, bearing Case No. 1:22-cv-02758-RPK-VMS.  Sonn also asserted claims against Kendalle's sister Sarah, ASG Investments, Minerva, and Leberman. Despite the confidential nature of the parties' business and contractual arrangement, and the ongoing obligation to maintain confidentiality, Sonn filed her New York complaint in the public docket without any attempt to redact, seal or maintain as private the confidential information contained therein.

68.    On June 21, 2022, the Los Angeles Times published an article regarding Kendalle, KPG and the Gordon Getty family members, citing extensively to Sonn's New York Complaint, which was filed in the open docket.  Kendalle and KPG are informed and believe that Sonn contacted a reporter at the Los Angeles Times to disclose the filing of her Complaint against KPG and Kendalle.

69.    Thereafter, the parties stipulated to consolidate these cases into a single action in the District of Nevada, to participate in a settlement conference, and to stay all proceedings pending the resolution of that settlement conference.

70.    Shortly before the scheduled settlement conference, Evan Osnos ("Osnos"), a journalist from The New Yorker, asked Kendalle to comment on recent allegations Sonn had made about Kendalle, KPG, and other members of the Getty family.

71.    On January 16, 2023, The New Yorker published Osnos' article entitled *The Getty Family Trust Issue* (the "New Yorker Article").

72.    Upon information and belief, Sonn spoke to Osnos and shared highly confidential information about Kendalle and KPG's finances, including, but not limited to,

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

KPG's investment strategies, financial transactions and deliberations, taxes, and payout expectations.

73.     Sonn gained information regarding KPG's confidential information while she was employed as KPG's Vice President, and subject to the confidentiality provision contained in her Employment Agreement.

74.     Upon information and belief, the New Yorker Article includes the confidential information that Sonn provided Osnos in violation of the Employment Agreement's confidentiality provision.  The New Yorker Article reveals that Sonn had at least one telephone conversation and one in-person meeting with Osnos in which she disclosed confidential information.

75.     Immediately after Sonn caused the New Yorker Article to be published, Kendalle received anonymous offensive and threatening messages.  Upon information and belief, the threatening messages were sent as a result of the publicity created by Sonn's breach of her confidentiality agreement.

## FIRST CAUSE OF ACTION

### (Breach of Contract)

76.     Plaintiffs hereby repeat, reallege, and incorporate all the above-stated allegations of this First Amended Complaint as if fully set forth herein.

77.     On November 1, 2015, Sonn and KPG entered into the Employment Agreement whereby Sonn would serve as the Vice President of Plaintiff KPG.

78.     The Employment Agreement is a valid, binding, and enforceable contract.

79.     Plaintiffs performed all conditions, covenants, and provisions required under the Employment Agreement.

80.     The Employment Agreement states, in relevant part, "Employee acknowledges the Corporation's right and title to all proprietary materials which constitutes all materials used in the Corporation's business, including financial information and reports relating to any trust for which the Corporation may serve as trustee and agrees not to disclose any such material to any third party except in the course of the

duties of Employee on behalf of the Corporation or as may be required by court order or lawful subpoena, after reasonable notice to the Corporation."

81. Sonn breached the Employment Agreement by, among other things, disclosing KPG's confidential information to third parties, including the Los Angeles Times, Osnos and The New Yorker, who publicized Kendalle's and KPG's confidential information in the New Yorker Article.

82. Sonn's breach of the Employment Agreement caused anonymous individuals to send Kendalle offensive and threatening messages. The messages caused Kendalle emotional and mental harm.

83. Sonn caused, and will continue to cause, irreparable injury to Plaintiffs if she is not restrained from further breaching the confidentiality provision contained in the Employment Agreement. Plaintiffs have no adequate remedy at law, and therefore seek injunctive relief under 15 U.S.C. § 1116.

84. As a direct and proximate result of Sonn's conduct, Plaintiffs have suffered and will continue to suffer damages in an amount to be proven at trial, in excess of $15,000.

85. Sonn's conduct has required Plaintiffs to retain legal counsel to seek relief. Plaintiffs are entitled to an award of their attorney's fees and costs incurred in bringing this action.

### SECOND CAUSE OF ACTION

### (Contractual Breach of the Implied Covenant of Good Faith and Fair Dealing)

86. Plaintiffs hereby repeat, reallege, and incorporate all the above-stated allegations of this First Amended Complaint as if fully set forth herein.

87. Nevada law imposes a duty of good faith and fair dealing into every contract.

88. Sonn breached the covenant of good faith and fair dealing implied in the Employment Agreement by performing in a manner unfaithful to its purpose and deliberately contravened the intention and spirit of that agreement.

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

89.     Sonn, under the implied covenant of good faith and fair dealing, had a legal duty not to disclose confidential information that she learned while employed as KPG's Vice President.  Sonn deliberately contravened the intention and spirit of the Employment Agreement by disclosing such information to third parties, resulting in the publishing of KPG's confidential information in the Los Angeles Times and The New Yorker.

90.     As a direct and proximate result of Sonn's conduct, Plaintiffs have suffered and will continue to suffer damages in an amount to be proven at trial, in excess of $15,000.

91.     Sonn's conduct has required Plaintiffs to retain legal counsel to seek relief. Plaintiffs are entitled to an award of their attorney's fees and costs incurred in bringing this action.

### THIRD CAUSE OF ACTION
### (Breach of Fiduciary Duty)

92.     Plaintiffs hereby repeat, reallege, and incorporate all the above-stated allegations of this First Amended Complaint as if fully set forth herein.

93.     NRS 78.138(1) states: "The fiduciary duties of directors and officers are to exercise their respective powers in good faith and with a view to the interests of the corporation."

94.     As an officer of KPG, a Nevada corporation organized under Chapter 78, Sonn had a duty to exercise her powers in good faith and with a view to the interests of KPG.

95.     As Kendalle's personal financial advisor, Sonn had a fiduciary duty to render advice and recommendations that were in Kendalle's best interests.

96.     Sonn's unilateral preparation of the Second Incentive Award Letter to disproportionately inflate her compensation and remove numerous provisions safeguarding the legal interests of KPG and Kendalle was not in the best interests of KPG or Kendalle, and constituted a breach of Sonn's fiduciary duties.

97.    Sonn's pressuring of Kendalle to execute the Second Incentive Award Letter, and recommendation that she do so, was not in the best interests of KPG or Kendalle, and constituted a breach of Sonn's fiduciary duties.

98.    Sonn's statements to Kendalle that she did not need to consult legal counsel or seek others' advice regarding execution of the Second Incentive Award Letter were not in the best interests of KPG or Kendalle, and constituted a breach of Sonn's fiduciary duties.

99.    Sonn's misrepresentations to Kendalle regarding the justification for and effect of the Second Incentive Award Letter were not in the best interests of KPG or Kendalle, and constituted a breach of Sonn's fiduciary duties.

100.    Sonn's concealment of material and relevant information from Kendalle, including the true reasons for and effect of the Second Incentive Award Letter, was not in the best interests of KPG or Kendalle, and constituted a breach of Sonn's fiduciary duties.

101.    Sonn's leveraging of Kendalle's personal circumstances and her relationship of trust with Kendalle was not in the best interests of KPG or Kendalle, and constituted a breach of Sonn's fiduciary duties.

102.    As a direct and proximate result of Sonn's conduct, Plaintiffs have suffered and will continue to suffer damages in an amount to be proven at trial, in excess of $15,000.

103.    Sonn's conduct has required Plaintiffs to retain legal counsel to seek relief. Plaintiffs are entitled to an award of their attorney's fees and costs incurred in bringing this action.

### FOURTH CAUSE OF ACTION

### (Fraudulent/Intentional Misrepresentation)

104.    Plaintiffs hereby repeat, reallege, and incorporate all the above-stated allegations of this First Amended Complaint as if fully set forth herein.

105.    Between March 14, 2021 and March 17, 2021, Sonn falsely represented to Kendalle that the Second Incentive Award Letter was a "standard" document that served only to corroborate and substantiate the terms of the original Incentive Award Letter.  In

MCDONALD CARANO
2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

fact, the Second Incentive Award Letter contained major material modifications to the terms of the original Incentive Award Letter.

106. Between March 14, 2021 and March 17, 2021, Sonn falsely represented the nature of the amount of her bonus under the Second Incentive Award Letter, which was in fact a percentage of the total Pleiades Trust.

107. Between March 14, 2021 and March 17, 2021, Sonn omitted facts related to the true nature of the Second Incentive Award Letter, including the fact that the terms were not in the best interest of KPG and Kendalle, despite the fact that Sonn was bound in good faith to disclose such facts to Kendalle.  Sonn's omissions are equivalent to false representations, as they constituted indirect representations that such facts did not exist.

108. Sonn knew and believed that these representations were false.

109. Sonn intended to induce Kendalle to execute the Second Incentive Award Letter based on her representations.

110. Given that Sonn was the Vice President of KPG, Kendalle's personal financial advisor, and someone that Kendalle believed to be her close personal friend, Kendalle justifiably relied on Sonn's representations.

111. As a direct and proximate result of Sonn's conduct, Plaintiffs have suffered and will continue to suffer damages in an amount to be proven at trial, in excess of $15,000.

112. Sonn's conduct has required Plaintiffs to retain legal counsel to seek relief. Plaintiffs are entitled to an award of their attorney's fees and costs incurred in bringing this action.

### FIFTH CAUSE OF ACTION

### (Negligent Misrepresentation)

113. Plaintiffs hereby repeat, reallege, and incorporate all the above-stated allegations of this First Amended Complaint as if fully set forth herein.

114. Sonn, in the course of her employment with KPG and provision of personal financial planning services to Kendalle, failed to exercise reasonable care or competence

1   in obtaining or communicating the information to guide Plaintiffs in connection with
2   business transactions.

3      115.   Sonn supplied false information and failed to disclose material information
4   she had a duty to disclose related to the nature of the Second Incentive Award Letter,
5   including facts related to whether the terms of the Second Incentive Award Letter were
6   fair, justified, and in the best interests of KPG and Kendalle.

7      116.   Given Sonn's experience as a financial planner, status as Vice President of
8   KPG, and close personal and professional relationship with Kendalle, Plaintiffs justifiably
9   relied on information provided by Sonn.

10     117.   As a direct and proximate result of Sonn's conduct, Plaintiffs have suffered
11  and will continue to suffer damages in an amount to be proven at trial, in excess of
12  $15,000.

13     118.   Sonn's conduct has required Plaintiffs to retain legal counsel to seek relief.
14  Plaintiffs are entitled to an award of their attorney's fees and costs incurred in bringing
15  this action.

## SIXTH CAUSE OF ACTION

### (Rescission; Fraudulent Inducement; Unconscionability; Undue Influence)

19     119.   Plaintiffs hereby repeat, reallege, and incorporate all the above-stated
18  allegations of this First Amended Complaint as if fully set forth herein.

19     120.   In March 2021, Sonn made false representations to Plaintiffs regarding the
20  nature of the Second Incentive Award Letter, including facts related to the Second
21  Incentive Award Letter.  Specifically, Sonn represented that the terms of the Second
22  Incentive Award Letter were fair, justified, and in the best interests of KPG and Kendalle.

23     121.   Sonn knew that the representations regarding the nature of the Second
24  Incentive Award Letter were false or that she had an insufficient basis of information for
25  making the representations.

26     122.   Sonn made the false representations with the intent that Plaintiffs would rely
27  upon the statements and execute the Second Incentive Award Letter.

28

McDONALD CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

123.   Plaintiffs justifiably relied upon Sonn's representations in executing the Second Incentive Award Letter.

124.   Only once other non-interested parties provided Plaintiffs advice (which Sonn actively sought to prevent prior to execution of the Second Incentive Award Letter) did Plaintiffs discover that Sonn's representations were false, and that such representations were designed to induce Plaintiffs to execute the Second Incentive Award Letter against Plaintiffs' interests.

125.   As a result of Sonn's fraudulent inducement, Plaintiffs are entitled to rescission of the Second Incentive Award Letter.

126.   The Second Incentive Award Letter is both procedurally and substantively unconscionable.

127.   Due to the circumstances surrounding the execution of the Second Incentive Award Letter, including Kendalle's reliance on Sonn to act in her best interests, which caused her to believe that no review of the terms was necessary, unequal bargaining power was created between Sonn and Plaintiffs, and Plaintiffs lacked meaningful opportunity to agree to the Second Incentive Award Letter's terms.

128.   The terms of the Second Incentive Award Letter, including the provision entitling Sonn to a guaranteed schedule of payments totaling $2.5 million that would accelerate to be paid immediately upon her termination for any reason, were so one-sided and oppressive as to constitute substantive unconscionability.

129.   As a result of the unconscionable nature of the Second Incentive Award Letter, Plaintiffs are entitled to rescission of the Second Incentive Award Letter.

130.   Sonn exerted undue influence over Kendalle in pressuring Kendalle to execute the Second Incentive Award Letter, based on events in Kendalle's personal life and Sonn's fiduciary relationship to Kendalle.

131.   Kendalle was unduly susceptible to the excessive and unreasonable pressure Sonn placed on Kendalle to execute the Second Incentive Award Letter, the terms of which were grossly one-sided and unfair to Plaintiffs.

132.    Kendalle assumed Sonn would not act in a manner inconsistent with Plaintiffs' welfare.

133.    As a result of Sonn's exertion of undue influence over Kendalle, Plaintiffs are entitled to rescission of the Second Incentive Award Letter.

134.    As a direct and proximate result of Sonn's conduct, Plaintiffs have suffered and will continue to suffer damages in an amount to be proven at trial, in excess of $15,000.

135.    Sonn's conduct has required Plaintiffs to retain legal counsel to seek relief. Plaintiffs are entitled to an award of their attorney's fees and costs incurred in bringing this action.

**SEVENTH CAUSE OF ACTION**

**(Contractual Breach of the Implied Covenant of Good Faith and Fair Dealing)**

136.    Plaintiffs hereby repeat, reallege, and incorporate all the above-stated allegations of this First Amended Complaint as if fully set forth herein.

137.    Nevada law imposes a duty of good faith and fair dealing into every contract.

138.    Sonn breached the covenant of good faith and fair dealing implied in the original Incentive Award Letter by performing in a manner unfaithful to its purposes.  Sonn breached her fiduciary duties, misrepresented material facts to Kendalle regarding the Second Incentive Award Letter, concealed material facts that she had a duty to disclose to Kendalle, and circumvented the terms of the original Incentive Award Letter.

139.    As a direct and proximate result of Sonn's conduct, Plaintiffs have suffered and will continue to suffer damages in an amount to be proven at trial, in excess of $15,000.

140.    Sonn's conduct has required Plaintiffs to retain legal counsel to seek relief. Plaintiffs are entitled to an award of their attorney's fees and costs incurred in bringing this action.

//

//

//

**EIGHTH CAUSE OF ACTION**

**(Tortious Breach of the Implied Covenant of Good Faith and Fair Dealing)**

141.    Plaintiffs hereby repeat, reallege, and incorporate all the above-stated allegations of this First Amended Complaint as if fully set forth herein.

142.    As Sonn was a fiduciary of Plaintiffs, a special relationship existed between Sonn and Plaintiffs.

143.    As an officer of KPG and a trusted personal financial advisor to Kendalle, Sonn was in an entrusted position.

144.    Sonn engaged in grievous and perfidious misconduct by seeking to remove the protections of Plaintiffs' legal rights set forth in the original Incentive Award Letter, preparing the Second Incentive Award Letter, misrepresenting the nature of the Second Incentive Award Letter, concealing material facts regarding the Second Incentive Award Letter, pressuring Kendalle to sign the Second Incentive Award Letter, and retaining funds paid as a result of her conduct.

145.    As a direct and proximate result of Sonn's conduct, Plaintiffs have suffered and will continue to suffer damages in an amount to be proven at trial, in excess of $15,000.

146.    Sonn's conduct has required Plaintiffs to retain legal counsel to seek relief. Plaintiffs are entitled to an award of their attorney's fees and costs incurred in bringing this action.

**NINTH CAUSE OF ACTION**

**(Unjust Enrichment, In The Alternative)**

147.    Plaintiffs hereby repeat, reallege, and incorporate all the above-stated allegations of this First Amended Complaint as if fully set forth herein.

148.    Plaintiffs conferred a benefit on Sonn by providing funds to which Sonn was not entitled.

149.    Sonn knew of the benefit conferred by Plaintiffs and has been unjustly enriched, at the expense of and to the detriment of Plaintiffs.

McDONALD CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

150.    As a direct and proximate result of Sonn's conduct, Plaintiffs have suffered and will continue to suffer damages in an amount to be proven at trial, in excess of $15,000.

151.    Sonn's conduct has required Plaintiffs to retain legal counsel to seek relief. Plaintiffs are entitled to an award of their attorney's fees and costs incurred in bringing this action.

## TENTH CAUSE OF ACTION

### (Declaratory Relief)

152.    Plaintiffs hereby repeat, reallege, and incorporate all the above-stated allegations of this First Amended Complaint as if fully set forth herein.

153.    An actual and justifiable controversy has arisen and now exists between Plaintiffs and Sonn with respect to the formation and validity of the Second Incentive Award Letter and the obligations arising therefrom.

154.    Plaintiffs deny that Sonn is owed the sums set forth in the Second Incentive Award Letter.

155.    To date, Sonn has retained $833,333 she wrongfully received in connection with the Second Incentive Award Letter.  Sonn claims she is entitled to the remaining amounts set forth in the Second Incentive Award Letter.

156.    These issues are ripe for judicial determination because Sonn has retained amounts she wrongfully received, and maintains that she is owed further amounts.

157.    Plaintiffs request a judicial determination of the rights and obligations between Plaintiffs and Sonn as described herein.   In particular, Plaintiffs seek the following declarations and determinations from the Court:

a.    The Second Incentive Award Letter is void due to Sonn's fraudulent inducement, the unconscionable nature of the agreement, and Sonn's undue influence exerted over Kendalle;

b.    Plaintiffs are entitled to repayment of the amounts paid to Sonn under the auspices of the Second Incentive Award Letter in the amount of $833,333; and

McDONALD CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

c.      Plaintiffs are not obligated to pay Sonn any further sums under the Second Incentive Award Letter or any other purported agreement.

158.    Such declarations are necessary and appropriate at this time so that Plaintiffs may ascertain their rights with respect to the subject matter of the parties' dispute.

159.    Sonn's conduct has required Plaintiffs to retain legal counsel to seek relief. Plaintiffs are entitled to an award of their attorney's fees and costs incurred in bringing this action.

## **PRAYER FOR RELIEF**

For these reasons, Plaintiffs pray for relief against Sonn as follows:

(1)     For general, compensatory, and punitive damages;

(2)     For reasonable attorney's fees and costs;

(3)     For prejudgment and post-judgment interest on all sums awarded according to proof at the maximum legal rate;

(4)     For the issuance of a preliminary or permanent injunction order enjoining Sonn from further disclosing KPG's confidential information in accordance with the Employment Agreement; and

(5)     For such other and further relief as the Court may deem just and proper.

Dated:  July 10, 2023.

MCDONALD CARANO LLP


By: ___/s/ Leigh Goddard_____
Leigh T. Goddard, NV Bar No. 6315
Daniel I. Aquino, NV Bar No. 12682
Tara U. Teegarden, NV Bar No. 15344
McDONALD CARANO LLP
100 W. Liberty St., Tenth Floor
Reno, Nevada 89501
Telephone: (775) 788-2000
lgoddard@mcdonaldcarano.com
daquino@mcdonaldcarano.com
tteegarden@mcdonaldcarano.com

*Attorneys for Kendalle Getty and*
*KPG Investments, Inc.*

## CERTIFICATE OF SERVICE

I certify that I am an employee of McDonald Carano LLP, and that on the 10th day of July, 2023, a true and correct copy of the foregoing **FIRST AMENDED COMPLAINT** was electronically filed with the Clerk of the Court by using the CM/ECF system which sent electronic notification to all registered users as follows:

Max Ephraim Rodriguez
Pollock Cohen LLP
111 Broadway, Suite 1804
New York, NY 11211
max@pollockcohen.com

Agatha M. Cole
Beverly PLLC
43 Wets 43rd Street, Suite 159
New York, NY 10036
agatha@beverlypllc.com
*Attorneys for Marlena Sonn*

David Slarskey
Slarskey LLC
800 Third Avenue, 18th Floor
New York, NY 10022
dslarskey@slarskey.com

Mark H. Gunderson
Austin K. Sweet
Gunderson Law Firm
3895 Warren Way
Reno, Nevada 89509
mgunderson@gundersonlaw.com
asweet@gundersonlaw.com
*Attorneys for Minerva Office Management, Inc. and Robert L. Leberman*

Alice Campos Mercado
Lemons, Grundy & Eisenberg
6005 Plumas Street, Third Floor
Reno, Nevada 89519
acm@lge.net

Matthew Savage Aibel
Paul Hastings LLP
200 Park Avenue
New York, NY 10166
mattewaibel@paulhastings.com
*Attorneys for Alexandra Sarah Getty and ASG Investments, Inc.*

Lisa Cleary
Patterson, Belknap, Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
lecleary@pbwt.com

*Attorney for KPG Investments, Inc. and Kendalle Gerry*

*/s/ Tracy L. Brown*
Employee of McDonald Carano LLP

<EXHIBIT INDEX>

| Ex. No. | Description | Page Count |
|---------|-------------|------------|
| 1 | November 1, 2015 Employment Agreement | 4 Pages |
| 2 | First Incentive Award Letter | 2 Pages |
| 3 | Second Incentive Award Letter | 3 Pages |

McDONALD CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966