SONYA Z. MEHTA, SBN 294411
SIEGEL, YEE, BRUNNER & MEHTA
475 14th Street, Suite 500
Oakland, CA 94612
Telephone: (510) 839-1200
Facsimile: (510) 444-6698
sonyamehta@siegelyee.com
*Admitted pro hac vice*

RYAN A. HAMILTON, SBN 11587
HAMILTON LAW
5125 South Durango Drive
Las Vegas, NV 89113
702-818-1818
Ryan@HamLegal.com

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| KPG INVESTMENTS INC., a Nevada Corporation; KENDALLE GETTY, an individual,<br><br>             Plaintiffs,<br><br>      vs.<br><br>MARLENA SONN, AND DOES 1-20 ,<br><br>             Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) |
| MARLENA SONN,<br>             Plaintiff,<br><br>      vs.<br><br>KENDALLE P. GETTY, as Trustee of the Pleiades Trust and as an individual, KPG INVESTMENTS, INC., as Trustee of the Pleiades Trust, ALEXANDRA SARAH GETTY, as Trustee of the Pleiades Trust and as an individual, ASG INVESTMENTS, INC., as Trustee of the Pleiades Trust, MINERVA OFFICE MANAGEMENT, INC., and ROBERT L. LEBERMAN,<br>             Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

Consolidated case
3:22-cv-00236-ART-CLB

**DEFENDANT MARLENA SONN'S MOTION TO DISMISS KPG AND KENDALLE GETTY'S FIRST AMENDED COMPLAINT**

---

*KPG and Getty v. Sonn, Sonn v. Getty et al.*, Case No. 3:22-cv-00236-ART-CLB
Sonn Motion to Dismiss KPG's and Kendalle's FAC -

# TABLE OF CONTENTS

MOTION...................................................................................................... 1

INTRODUCTION........................................................................................ 2

SUMMARY OF ALLEGATIONS................................................................ 2

1)  KPG employed Sonn as its Vice President in their 2015 Employment
    Agreement.............................................................................................. 2

2)  KPG and Sonn's 2017 First Incentive Award Letter (FIAL) one-sided
    terms....................................................................................................... 3

    a)  The FIAL awarded Sonn 25 basis points of the total trust..................... 3

    b)  The FIAL allowed Kendalle to avoid paying the bonus because it
        allowed her to not pay Sonn if she did not employ Sonn when she
        received the trust corpus, or after Sonn signed a release of claims.......... 4

3)  KPG and Sonn agreed to the 2021 Second Incentive Award's fair
    terms....................................................................................................... 4

4)  Allegations regarding 2021 SIAL negotiations. ........................................ 5

5)  Breach of confidentiality allegations. ...................................................... 6

STATEMENT OF LAW............................................................................... 7

ARGUMENT................................................................................................ 7

1)  Plaintiffs' first and second "confidentiality" claims are not sufficiently
    pleaded, evidence no agreement with Kendalle, and barred by
    privilege................................................................................................. 7

    a)  Filing the complaint was privileged. ..................................................... 8

    b)  The gravamen of the FAC sounds in tort, not contract............................ 8

    c)  The fair reporting privilege covers the articles...................................... 9

2)  Claims three to ten fail because Sonn's duty was to KPG, and she fulfilled
    it by full disclosure; the terms were express so fraud cannot lie................... 10

    a)  Plaintiffs' third cause of action for breach of fiduciary duty fails. Sonn
        satisfied her officer duties toward KPG by disclosing her interest; she
        had no fiduciary duty to Kendalle as President of KPG, and even if she
        did, she fulfilled that through full disclosure of the SIAL....................... 10

      i) KPG's allegation of breach of fiduciary duty under Nevada Revised Statutes 78.138(1). ................................................................ 10

      ii) Kendalle's allegation of breach of fiduciary duty under Nevada Revised Statutes 628A.020 fails because Sonn owed her no duty and even if she did, she fully disclosed the SIAL terms...................... 12

b) Plaintiffs' fourth cause of action, fraudulent/intentional misrepresentation, cannot lie where the terms were express................... 13

      i) Intentional misrepresentation.................................................. 13

      ii) Fraud by nondisclosure....................................................... 15

c) The fifth cause of action, negligent misrepresentation, fails because of unspecified facts and Sonn's full disclosure............................................ 15

d) The sixth cause of action, pleading rescission, fraudulent inducement, unconscionability, undue influence, fail due to full disclosure or a lack of fiduciary duty regarding the SIAL.............................................. 16

      i) Rescission. ......................................................................... 16

      ii) Fraudulent inducement cannot lie where the terms disclosed........... 16

      iii) The SIAL was procedurally and substantively sound and thus not unconscionable...................................................................... 17

        (1) The first prong: procedural unconscionability............................. 17

        (2) The second prong: substantive unconscionability........................ 19

      iv) Undue influence. ................................................................ 21

      v) The seventh cause of action, contractual breach of the implied covenant of good faith and fair dealing, fails because Sonn disclosed the terms. ............................................................. 22

      vi) The eighth claim, tortious breach of the implied covenant of good faith and fair dealing, fails because there was no fraud..................... 23

      vii) Unjust enrichment is not available where there was a contract, and even if there was no contract, there was no fraud or breach. 24

      viii) Declaratory relief is not a cause of action and its basis fails.............. 25

CONCLUSION................................................................................. 25

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Federal cases**

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)...................................... 7

*Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916 (9th Cir. 2013)................. 17, 18, 19

*Cir. City Stores, Inc. v. Adams*, 279 F.3d 889 (9th Cir. 2002)................... 17

*Crockett & Meyers, Ltd. v. Napier, Fitzgerald & Kirby, LLP*, 583 F.3d 1232 (9th Cir. 2009)................................................................................... 9

*Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133 (1990)............................ 21

*Ingle v. Cir. City Stores, Inc.*, 328 F.3d 1165 (9th Cir. 2003)..................... 20,

*Landow v. Bartlett*, WL 8064074 (D. Nev. 2019)....................................... 12

*Lui Ciro, Inc. v. Ciro, Inc.*, 895 F. Supp. 1365 (D. Haw. 1995)................... 14

*Quilloin v. Tenet HealthSystem Philadelphia, Inc.*, 673 F.3d 221 (3d Cir. 2012)................................................................................................... 18, 22

*Searcy v. Esurance Ins. Co.*, 243 F. Supp. 3d 1146 (D. Nev. 2017)............. 8

*Smith v. Craig*, WL 1065715 (D. Nev. 2020)............................................. 9

*Smith v. Fennemore Craig*, WL 1065715 (D. Nev. 2020)........................... 8

*Takiguchi v. MRI Int'l, Inc.*, 47 F. Supp. 3d 1100 (D. Nev. 2014).............. 7, 14

*Tough Turtle Turf, LLC v. Scott*, 537 P.3d 883 (2023).............................. 18, 20

*US Bank, N.A. v. SFR Investment Pool 1, LLC*, WL 4473427 (D. Nev. 2016)................................................................................................... 24, 25

*USA Wheel & Tire Outlet #2, Inc. v. United Parcel Service*, WL 197733 (C.D. Cal. 2014)................................................................................... 9

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 109 (9th Cir. 2003)................... 7, 14

*White v. Second Jud. Dist. Ct. in & for Cnty. Of Washoe*, 543 P.3d 107 (2024)................................................................................................. 17, 19

**Federal Rules**

Federal Rule of Procedure 12(b)(6) ......................................................... 1, 7

**Nevada state cases**

*Adelson v. Harris*, 133 Nev. 512 (2017) ....................................................... 10

*Bullivant Houser Bailey PC v. Eighth Judicial Dist. Ct.*, 128 Nev. 885 (2012)........................................................................................................... 8

*Burch v. Second Jud. Dist. Ct. of State ex rel. Cnty. Of Washoe*, 118 Nev. 438 (2002)................................................................................................... 18

*FQ Men's Club, Inc. v. Doe Dancers I*, 136 Nev. 809 (2020)..................... 18, 19

*Great Am. Ins. Co. v. Gen. Builders, Inc.,* 113 Nev. 346 (1997).................. 24

*Greenberg Traurig v. Frias Holding Co.*, 130 Nev. 627 (2014)................. 8

*K Mart Corp. v. Ponsock*, 103 Nev. 39 (1987)............................................ 21

*Leasepartners Corp. v. Robert L. Brooks Tr. Dated Nov. 12, 1975*, 113 Nev. 747 (1997)................................................................................................. 24

*Lehrer McGovern Bovis, Inc. v. Bullock Insulation, Inc.*, 124 Nev. 1102 (2008)........................................................................................................... 21

*Peardon v. Peardon*, 65 Nev. 717 (1948)..................................................... 22

*Phillips v. Valley View Surgical, LLC*, 137 Nev. 951 (Nev. App. 2021)....... 17

*Rd. & Highway Builders v. N. Nev. Rebar*, 128 Nev. 384 (2012)............... 14, 16, 23

*Sahara Gaming Corp. v. Culinary Workers Union Local 226*, 115 Nev. 212 (1999)......................................................................................................... 9, 10

*Wynn Resorts, Ltd. v. Eighth Jud. Dist. Ct. in & for Cnty. of Clark*, 133 Nev. 369 (2017)............................................................................................. 11

**California state cases**

*Patterson v. ITT Consumer Fin. Corp.*, 14 Cal.App.4th 1659 (1993).......... 11

*Wentland v. Wass*, 126 Cal.App.4th 1484 (2005)........................................ 8

**Nevada statutes**

Nevada Revised Statute § 78.138(1)............................................................. 10, 15

Nevada Revised Statute § 78.138(3)............................................................. 11

Nevada Revised Statute § 78.138(7)............................................................. 11

1

Nevada Revised Statute § 90.575(1)...................................................... 12

2

Nevada Revised Statute § 628A.020............................................. 12, 13, 16, 23

3

**Nevada Jury Instructions**

4

5

Nevada Jury Instruction, 10.1............................................................. 13

6

Nevada Jury Instruction, 10.2............................................................. 13

7

Nevada Jury Instruction, 10.9............................................................. 13

8

Nevada Jury Instruction, 13.12............................................................ 24

9

Nevada Jury Instruction, 13.25............................................................ 22

10

Nevada Jury Instruction, 13.27............................................................ 17

11

Nevada Jury Instruction, 15.14............................................................ 11

12

Nevada Jury Instruction, 16.1............................................................. 23

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

### MOTION TO DISMISS

TO:     The Clerk of the Court, Plaintiffs Kendalle P. Getty and KPG Investments Inc., Defendants Minerva Office Management Inc. and Robert L. Leberman, and Defendants Alexandra Sarah Getty and ASG Investments Inc., and all other attorneys of record:

Defendant Marlena Sonn will and hereby does move this Court, pursuant to Federal Rules of Procedure Rule 12(b)(6) to dismiss Plaintiffs Kendalle P. Getty and KPG Investments Inc.'s First Amended Complaint, as follows:

1) Plaintiffs' breach of confidentiality claims are not pleaded with reasonable particularity, and sound in tort and are thus not actionable under litigation privilege and fair report.

2) Plaintiffs failed to allege that Sonn had a fiduciary duty toward Kendalle Getty, President of KPG, in KPG's business decision to fairly compensate its employee Sonn. KPG received the simple 2-page agreement which fully disclosed Sonn's deferred compensation amount and all the terms therein, signed it, and paid the first payment. There can be no fraud where the terms were express. The 2021 Incentive Agreement Letter was fully disclosed, fair, and equitable. Plaintiffs both fail to specifically allege what amounts to dozens of claims, and the allegations cannot establish the claims.

The motion to dismiss is based on the following memorandum of points and authorities, the filings in this action, and all other matters of which the Court may take notice.

Respectfully submitted,

Dated: May 1, 2024          SIEGEL, YEE, BRUNNER & MEHTA

By: ___/s/ Sonya Z. Mehta_____
        Sonya Z. Mehta

Attorneys for Marlena Sonn

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Marlena Sonn moves to dismiss the entirety of KPG Investments' and Kendalle Getty's first amended complaint against her. Plaintiffs' breach of confidentiality claims are not pleaded with reasonable particularity, and sound in tort and are thus not actionable under litigation privilege and fair report.

Plaintiffs failed to allege that Sonn had a fiduciary duty toward Kendalle Getty, President of KPG, in KPG's business decision to fairly compensate its employee Sonn. KPG received the simple 2-page agreement which fully disclosed Sonn's deferred compensation amount and all the terms therein, signed it, and paid the first payment. There can be no fraud where the terms were express. The 2021 Incentive Agreement Letter was fully disclosed, fair, and equitable. Plaintiffs both fail to specifically allege what amounts to dozens of claims, and the allegations cannot establish the claims.

## SUMMARY OF ALLEGATIONS

The Pleiades Trust ("Pleiades") was established for the benefit of Kendalle P. Getty ("Kendalle")[1] and others. (ECF No. 105, KPG and Kendalle First Amended Complaint (FAC), ¶ 12.) KPG Investments ("KPG") is and was a trustee of Pleiades, and a corporation organized under Chapter 78 of the Nevada Revised Statutes and governed by the laws of Nevada. (*Id.*, ¶¶ 1, 13.) Kendalle was the President and sole director of KPG. (*Id.*, ¶ 13; ECF No. 105-1, ¶ 2.1, "sole director.")

**1) KPG employed Sonn as its Vice President in their 2015 Employment Agreement.**

On November 1, 2015, Sonn and KPG, not Kendalle, entered into an agreement ("2015 Employment Agreement") to employ Sonn as Vice President ("VP") of KPG. (*Id.*, ¶ 14, ECF No. 105-1, 2015 Employment Agreement, ¶ 1.) Sonn served KPG as a corporate

---

[1] Kendalle P. Getty will be referenced by her first name in this consolidated action to avoid confusion between Getty family members who share the same last name.

officer. (*Id.*, ¶ 17.) The 2015 Employment Agreement (ECF No. 105-1) between Sonn and KPG contained the following provisions:

> "1.2. Scope of Duties. To the best of Employee's ability, Employee shall faithfully, honestly and efficiently perform the duties assigned in accordance with the policies of the Corporation, the instructions of the sole director of the Corporation, and the employment standards set forth below in Section 1.5. ...
>
> 1.5. Employment Standards. In the performance of Employee's duties under this Agreement, Employee shall adhere to such employment standards, ethical practices, and standards of care and competence as are customary for an *employee holding a similar position as a vice president of a corporation* serving as a trustee to a family trust.
>
> 12. Entire Agreement. This Agreement ... contains the entire agreement and understanding of the parties with respect to the entire subject matter thereof ... ."
> (*Id.*)

The FAC alleged that Sonn was a Certified Financial Planner, whose responsibilities to KPG included managing investments and providing financial advice. (*Id.*, ¶ 18.) However, there was no allegation that the 2015 Employment Agreement or any other source committed Sonn to acting as a Certified Financial Planner or provider of financial advice to Kendalle as President of KPG. There was no allegation that "financial advice" included advice regarding employment contracts, or of Sonn's qualifications to provide advice regarding employment contracts. There was no allegation of any bylaws or policies related to Sonn's role at KPG.

In the "at-will" Employment Agreement, Sonn agreed to properly perform her duties and to a $100,000 annual salary which "may be adjusted by payment of a bonus." (ECF 105-1, ¶¶ 2.1, 3.1.) The bonus was solely at the Director's discretion. (*Id.*) The Agreement contained a "Governing Law" provision identifying Nevada. (*Id.*, ¶ 14.)

**2) KPG and Sonn's 2017 First Incentive Award Letter (FIAL) one-sided terms.**

**a) The FIAL awarded Sonn 25 basis points of the total trust.**

On November 10, 2017, KPG executed the First Incentive Award Letter ("FIAL"), which provided for two bonus payments to Sonn "in recognition of the valuable services that you continue to provide as an employee of KPG." (ECF 105, ¶¶ 21-25; ECF No. 105-

2, FIAL.) The FIAL provided for a first payment of 37.5 basis points of Kendalle's receipt of one or more distributions from Pleiades over $25,000,000, after tax, beginning from the date of Gordon Getty's death and contingent on KPG's continued employment of Sonn. (ECF No. 105-2, "First Incentive Bonus.")

This first payment is also described as "ie. 12.5 basis points (0.00125%) of the total aggregate amount of the Pleiades Trust." (*Id.*)

Once Kendalle received the final distribution of the Trust, Sonn would receive a second payment of another "12.5 basis points (0.00125%) of the total aggregate amount of the Pleiades Trust." (ECF No. 105-2, "Second Incentive Bonus.")

Therefore, the total amount KPG would pay to Sonn under the FIAL would be 25 basis points of the total aggregate amount of the Pleiades Trust.

**b) The FIAL allowed Kendalle to avoid paying the bonus because it allowed her to not pay Sonn if she did not employ Sonn when she received the trust corpus, or after Sonn signed a release of claims.**

The FAC alleged that KPG need not pay Sonn until Kendalle received the Pleiades distribution "to ensure that KPG did not become liable to Sonn for sums it had not yet received, particularly given that the Pleiades Trust contained investments, subject to market volatility and risk." (ECF No. 105, ¶ 28; ECF No. 105-2, "First Incentive Bonus.")

KPG could fire Sonn at any time before Gordon Getty's death, such as on his dying breath, and thus not pay her. (ECF No. 105-2, "First Incentive Bonus.") The FAC alleged this was "vital to incentivize Sonn to adequately perform her responsibilities and act in the best interests of KPG and Kendalle, so that she would remain employed through the applicable payment dates." (ECF No. 105, ¶ 27.)

The FIAL allowed KPG to fire Sonn after Sonn executed a release of claims, and thus again not have to pay her. (ECF No. 105-2, "Payment Terms.") KPG was responsible for providing the release of claims "form." (*Id.*)

**3) KPG and Sonn agreed to the 2021 Second Incentive Award's fair terms.**

KPG and Sonn's two-page Second Incentive Award Letter ("SIAL") again recognized Sonn's "valuable service that [she] continue[d] to provide." (ECF No. 105-3.)

It explicitly stated the following. (*Id.*) It "modified" the 2017 FIAL, "including the terms and conditions of" the FIAL. (*Id.*) It awarded Sonn $2.5 million, "which is rounded down from $2,588,918, *i.e.*, 25 basis points (0.00250%) of the value of the Trust corpus, which equaled $1,035,291,138 as of December 31, 2020." (*Id.*, Pleiades worth over one billion dollars in December 2020.)

Notably, the 2021 SIAL's 25 basis points of the total Pleiades trust was the same as the 2017 FIAL. (ECF No. 105-2, 105-3.) The FAC alleged the amount was "drastically increas[ed]" and "unilaterally" "inflated." (ECF No. 105, ¶¶ 36, 38.)

The 2021 SIAL was to be paid in three installments from 2021 to 2023. (ECF 105-3.) KPG was to provide the written release of claims form, and the SIAL allowed KPG to waive any portion of the Agreement ("General Terms"). (*Id.*) It bound KPG to interpret and make determinations about the SIAL "in good faith." (*Id.*)

**4) Allegations regarding 2021 SIAL negotiations.**

In or around March 2021, Sonn requested to renegotiate the FIAL and offered her draft for KPG's President Kendalle to sign. (ECF No. 105, ¶¶ 31-33.) The KPG-Sonn negotiations took place over March 14, 2021, to March 17, 2021. (*Id.*, ¶¶ 46-53.)

The FAC alleged Sonn represented that the SIAL terms were fair, justified, and in the best interests of KPG and Kendalle. (*Id.*, ¶ 34.) The FAC alleged that the SIAL was not fair, justified, and in best interests, supported only by the allegation that,

> "(f)ollowing Kendalle's execution of the Second Incentive Award Letter, various interested individuals associated with Kendalle learned of the Second Incentive Award Letter's terms. These individuals flagged the terms of the Second Incentive Award Letter and informed Kendalle that the terms were, in fact, unusual." (*Id.*, ¶¶ 35, 63.)

The FAC alleged Sonn told Kendalle it was not necessary to speak to a lawyer about the SIAL. (*Id.*, ¶ 45.) It alleged Sonn told Kendalle the SIAL was standard and corroborated and substantiated the SIAL. (*Id.*, ¶ 46.) There was no allegation of what is standard in this kind of agreement. It alleged Sonn told Kendalle the amount was $2 million, not $2.5 million as written in the SIAL. (*Id.*, ¶ 49.)

Kendalle responded that $2 million was steep and asked for time to think. She then signed the SIAL on March 21, 2021, three days after receipt. (*Id.*, ¶ 57.)

It alleged Sonn "pressured" Kendalle to sign but there was no allegation of a deadline or an adverse act by Sonn against Kendalle if Kendalle did not sign. (ECF No. 105, ¶ 44.) It alleged Sonn was aware of a death anniversary and undefined personal "stressful issues" in Kendalle's life. (*Id.*, ¶¶ 48.)

On March 31, 2021, KPG made the first payment. (*Id.*, ¶ 60.) It was not until eight months later and on November 30, 2021, that KPG terminated Sonn. (*Id.*, ¶ 65.) Kendalle also terminated Sonn in "her relationship providing financial planning services to Kendalle." (*Id.*)

**5) Breach of confidentiality allegations.**

The 2015 Agreement between KPG and Sonn contained the following provision:

> "Employee acknowledges the Corporation's right and title to all proprietary materials which constitutes all materials used in the Corporation's business, including financial information and reports relating to any trust for which the Corporation may serve as trustee and agrees not to disclose any such material to any third party except in the course of the duties of Employee on behalf of the Corporation or as may be required by court order or lawful subpoena, after reasonable notice to the Corporation." (*Id.*, ¶ 17.)

There was no allegation of any confidentiality agreement, or any agreement, between Kendalle and Sonn. On May 11, 2022, Sonn filed a lawsuit against Plaintiffs in the U.S. District Court of Eastern New York. (ECF No., 105, ¶ 67.) On June 21, 2022, the Los Angeles Times published an article that Plaintiffs alleged cited "extensively" to the lawsuit. (*Id.*, ¶ 68.) It failed to provide any of the citations used in the article. It alleged Sonn contacted a LA Times reporter to disclose the filing. (*Id.*)

On January 16, 2023, The New Yorker published an article about the lawsuit. (*Id.*, ¶ 71.) The FAC alleged Sonn shared information about Kendalle and KPG, including but not limited to, "KPG's investment strategies, financial transactions and deliberations, taxes, and payout expectations." (*Id.*, ¶ 72.) It alleged she gained this information while employed as KPG's VP and spoke to the New Yorker journalist at least

1   twice. (*Id.*, ¶¶ 73-74.) It alleged no harm to KPG, but harm to Kendalle because she

2   received threatening messages Plaintiffs believed were due to the article. (*Id.*, ¶ 75.)

### STATEMENT OF LAW

4   Dismissal is appropriate under Federal Rule of Procedure 12(b)(6) where a

5   plaintiff's complaint fails to state a claim upon which relief can be granted. *See Bell Atl.*

6   *Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A pleading must give fair notice of a legally

7   cognizable claim and the grounds on which it rests, and although a court must take all

8   factual allegations as true, legal conclusions couched as factual allegations are

9   insufficient. *Id.* at 555. Rule 12(b)(6) requires "more than labels and conclusions, and a

10  formulaic recitation of the elements of a cause of action will not do." *Id.*

11  Plaintiffs' fraud claims are subject to Rule 9(b)'s heightened pleading standard. A

12  plaintiff must provide the "who, what, when, where, and how" of the fraudulent actions.

13  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). "Rule 9(b) is

14  satisfied if the plaintiff [also] pleads "why the conduct was fraudulent." *Takiguchi v.*

15  *MRI Int'l, Inc.*, 47 F. Supp. 3d 1100, 1110–11 (D. Nev. 2014).

### ARGUMENT

17  **1) Plaintiffs' first and second "confidentiality" claims are not sufficiently
    pleaded, evidence no agreement with Kendalle, and barred by privilege.**

19  The FAC's first cause of action asserted that Sonn breached her Employment

20  Agreement by allegedly "disclosing KPG's confidential information to third parties … ."

21  (*Id.*, ¶ 81). The FAC's second cause of action asserted that the same facts supported a

22  theory of contractual breach of the implied covenant of good faith and fair dealing.

23  Specifically, the FAC accused Sonn of filing her complaint on the open docket, where it

24  was apparently seen by and reported on by the Los Angeles Times, and allegedly

25  discussing the complaint's allegations with a reporter from the New Yorker magazine.

26  First, only KPG and Sonn were party to the confidentiality provision. There was

27  no allegation of any confidentiality agreement between Sonn and Kendalle. Nor did the

28  FAC allege any disclosure of Kendalle's information, only "KPG's investment strategies,

    financial transactions and deliberations, taxes, and payout expectations." (*Id.*, ¶ 72.)

---

While the FAC stated that was not all-inclusive, it failed to allege *any* information published about Kendalle. Kendalle has thus not alleged a claim for breach.

As to KPG, the FAC failed to allege with particularity the supposed actual disclosures that were in the LA Times or New Yorker articles, making it impossible for Defendant to determine if those details were actually covered by the provision.

### a) Filing the complaint was privileged.

In addition, the allegations fail to state legally viable claims because (1) filing the complaint itself was protected by the absolute litigation privilege; and (2) sharing the complaint's contents with a reporter was protected by the absolute fair-report privilege.

A party claiming her contractual rights have been breached has an absolute privilege to present that contract and related information to a court. *Searcy v. Esurance Ins. Co.*, 243 F. Supp. 3d 1146, 1155 (D. Nev. 2017), "Under Nevada law, 'communications uttered or published in the course of judicial proceedings are absolutely privileged, rendering those who made the communications immune from civil liability.'" (*quoting Greenberg Traurig v. Frias Holding Co.,* 130 Nev. 627 (2014).

"The litigation privilege is broad; it applies so long as the statements are 'in some way pertinent to the subject of the controversy' and 'even if the communications were made with knowledge [of falsity] and malice.'" *Smith v. Fennemore Craig*, WL 1065715, at *8 (D. Nev. 2020)(*quoting Greenberg* at 903)). The FAC's allegation that the LA Times published an article regarding a filed lawsuit failed based on this privilege.

### b) The gravamen of the FAC sounds in tort, not contract.

Nevada applies the litigation privilege whenever the *gravamen* of the claim against the complaint-filer is in tort, regardless of legal theory employed. In *Bullivant Houser Bailey PC v. Eighth Judicial Dist. Ct.*, 128 Nev. 885 (2012) (unpub.), the court applied the privilege to bar claims of abuse of process, slander of title, intentional interference with contractual relationship, and intentional interference with prospective advantage. This is consistent with other jurisdictions. *See Wentland v. Wass*, 126 Cal.App.4th 1484, 1494–95 (2005), holding "[w]here the gravamen of the cause of

---

*KPG and Getty v. Sonn, Sonn v. Getty et al.*, Case No. 3:22-cv-00236-ART-CLB
Sonn Motion to Dismiss KPG's and Kendalle's FAC – 8

action sounds in tort, not contract, the litigation privilege applies."

Two federal decisions have also applied the Nevada litigation privilege to breach of contract or duty of good faith claims whose gravamen was actually in tort. *Crockett & Meyers, Ltd. v. Napier, Fitzgerald & Kirby, LLP*, 583 F.3d 1232, 1236 (9th Cir. 2009) (litigation privilege barred claim of breach of implied covenant of good faith and fair dealing); *Smith v. Craig*, WL 1065715, at *11 (D. Nev. 2020) (litigation privilege barred claim of breach of confidentiality clause in settlement agreement).

KPG's first and second causes of action showed on their face that their gravamen was the tort of defamation or invasion of privacy, not breach of contract. They alleged that Sonn breached her employment agreement by allegedly disclosing "confidential information to third parties," which supposedly "caused anonymous individuals to send Kendalle offensive and threatening messages," and allegedly "caused Kendalle emotional and mental harm." (FAC, ¶¶ 81–82.) These claims allege only harm to the personal reputation of Kendalle, a trust beneficiary, due to embarrassment from having her personal family history made public, classically defamation. *Smith* at *11.

By contrast, the FAC failed to assert that any alleged "breach of contract" by Sonn caused commercial injury to KPG, the party with which she contracted. KPG, as a corporate trustee, had no "trade secrets" to protect, and it had no "competitors" from whom to keep secret any customer lists. Those are the types of injuries normally associated with true breach of confidentiality litigation of the type cited by KPG. *USA Wheel & Tire Outlet #2, Inc. v. United Parcel Service*, WL 197733, at *1 (C.D. Cal. 2014). The gravamen of these counts are torts against Kendalle which are thus privileged.

**c) The fair reporting privilege covers the articles.**

Reporting already-public complaint allegations to the media is covered by a separate absolute privilege known as the fair-report privilege. Nevada law "has long recognized a special privilege of absolute immunity from defamation given to the news media and the general public to report newsworthy events in judicial proceedings." *Sahara Gaming Corp. v. Culinary Workers Union Local 226*, 115 Nev. 212, 214 (1999).

1   It "extends to any person who makes a republication of a judicial proceeding from

2   material that is available to the general public," such as a complaint filed in court. *Id.*

3       The fair-report privilege "'precludes liability even where the defamatory

4   statements are published with knowledge of their falsity and personal ill will toward the

5   plaintiff.'" *Adelson v. Harris*, 133 Nev. 512, 515 (2017). The fair-report privilege

6   immunizes the reporting person from all forms of "civil liability." *Adelson*, 133 Nev. at

7   519. This includes all claims whose gravamen is in tort, as here.

8       The fair-report privilege applies to a report that is "fair, accurate, and impartial."

9   *Sahara*, 115 Nev. at 215. An accurate report of the contents of a complaint is not biased

10  solely because no answer to the complaint has yet been filed. *Adelson*, 133 Nev. at 519

11  n.4. The table at ECF No. 65, pp. 6–7, which compares the discussion in the New Yorker

12  article with Sonn's complaint's allegations, demonstrated that the article presents a fair

13  and accurate description of the allegations in the complaint.

14      Since Sonn's filing of her complaint, the LA Times report of public information,

15  and her alleged reporting of its contents to the New Yorker were absolutely privileged

16  from the tort-based claims which are the gravamen of KPG's first and second claims,

17  this Court should dismiss them.

18  **2) Claims three to ten fail because Sonn's duty was to KPG, and she fulfilled
19      it by full disclosure; the terms were express so fraud cannot lie.**

20      **a) Plaintiffs' third cause of action for breach of fiduciary duty fails. Sonn
21          satisfied her officer duties toward KPG by disclosing her interest; she
22          had no fiduciary duty to Kendalle as President of KPG, and even if she
            did, she fulfilled that through full disclosure of the SIAL.**

23          **i)  KPG's allegation of breach of fiduciary duty under Nevada Revised
24              Statutes 78.138(1).**

25      Plaintiff KPG alleged Sonn breached fiduciary duty under NRS 78.138(1), which

26  states: "The fiduciary duties of directors and officers are to exercise their respective

27  powers in good faith and with a view to the interests of the corporation." (ECF 105, ¶ 93;

28  Nevada Revised Statutes (NRS) 78.138(1).) "[D]irectors and officers, in deciding upon

---

*KPG and Getty v. Sonn, Sonn v. Getty et al.*, Case No. 3:22-cv-00236-ART-CLB
Sonn Motion to Dismiss KPG's and Kendalle's FAC – 10

matters of business, are presumed to act in good faith, and on an informed basis and with a view to the interests of the corporation." *Id*. at NRS 78.138(3).

"A director or officer is furthermore not liable to the corporation unless (a) the presumption of good faith has been rebutted; and (b) it is proven that (i) the director or officer's actions constitute a breach of her fiduciary duty as director or officer; and (ii) such breach involved intentional misconduct, fraud or a knowing violation of law." *See* NRS 78.138(7). "The business judgment rule is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *Wynn Resorts, Ltd. v. Eighth Jud. Dist. Ct. in & for Cnty. of Clark*, 133 Nev. 369, 375, (2017).

To rebut this presumption, plaintiff must prove (1) the decision in question was not a business decision, (2) defendant had an undisclosed personal financial interest in the transaction that was the subject of the business decision in question, (3) defendant was not informed about the subject of the business decision to the extent defendant believed reasonably appropriate, and (4) defendant did not reasonably believe her business decision was in the best interest of the plaintiff. (Nevada Jury Instruction, 15.14, "Business Judgment Rule.")

Plaintiff KPG has not alleged that the SIAL was not a business decision. In fact, it alleged this decision was to "increase Sonn's compensation for her services as Vice President of KPG," which could only be a business decision. (ECF No. 105, ¶ 21.)

Second, it is undisputed that Sonn disclosed her financial interest by providing the SIAL to KPG, which executed the document. (ECF No. 105, ¶¶ 33 (Sonn presented SIAL to KPG President, 50 (KPG asked for time to think about the request), ECF 105-3, KPG executed).) There was no allegation Kendalle did not read the SIAL. Even if she had not, "failure to read the provision does not excuse compliance with it." *Patterson v. ITT Consumer Fin. Corp.*, 14 Cal. App. 4th 1659, 1666 (1993). As Plaintiffs cannot rebut that this was a business decision covered by the Business Judgment Rule, this claim fails.

### ii) Kendalle's allegation of breach of fiduciary duty under Nevada Revised Statutes 628A.020 fail because Sonn owed her no duty and even if she did, she fully disclosed the SIAL terms.

First, the allegations failed to establish that Sonn owed Kendalle a personal fiduciary duty regarding the SIAL. The employment agreement, FIAL, and SIAL are between only KPG and Sonn. None contain third party beneficiary language. The FAC alleged only that, "Sonn is a Certified Financial Planner, *whose responsibilities to KPG* included managing investments and providing financial advice." (ECF No. 105, ¶ 18, *emphasis added*.) The FAC provided no information on the scope of Sonn's duties to Kendalle as a personal financial advisor. There was no allegation that her duties included advising Kendalle in her function as President of KPG, or in KPG's (a separate party) employment agreements with its employee Sonn.

At best, the FAC alleged that "Sonn advised Kendalle on how she should vote on all trust investments and related matters," but the SIAL was not a trust investment, but an employment agreement regarding deferred compensation to Sonn. (ECF No. 1005, ¶ 55.) There was no specificity as to how the SIAL was a related matter to trust investments. Therefore, the FAC failed to allege that Sonn had any fiduciary duty to Kendalle regarding the SIAL. Thus, this claim fails.

Even if there were sufficient allegations, Sonn fulfilled any fiduciary duty to Kendalle under Nevada law. "Nevada did not recognize that an investment adviser owed his client a fiduciary duty until 2017." *Landow v. Bartlett*, WL 8064074, at *2 (D. Nev. 2019). "A broker-dealer, sales representative, investment adviser or representative of an investment adviser shall not violate the fiduciary duty toward a client imposed by NRS 628A.020." Nev. Rev. Stat. Ann. § 90.575(1). NRS 628A.020 states,

> "A financial planner has the duty of a fiduciary toward a client. A financial planner shall disclose to a client, at the time advice is given, any gain the financial planner may receive, such as profit or commission, if the advice is followed. A financial planner shall make diligent inquiry of each client to ascertain initially, and keep currently informed concerning, the client's financial circumstances and obligations and the client's present and anticipated obligations to and goals for his or her family."

The FAC evidenced no violation of NRS 628A.020. It was not a violation under NRS 628A.020 for Sonn to draft the SIAL. Sonn had no duty to tell Kendalle to consult with or provide a copy to her lawyers or anyone else.

Rather, Sonn did what she was required to do: she provided the actual document to Kendalle, which expressly outlined any modifications, including that the amount was $2.5 million. Sonn had no duty to not allegedly ask Kendalle to sign the SIAL, which she did after three days of considering the agreement. (ECF No. 105, ¶ 50.) Nor did Plaintiffs provide the allegations required by Rule 9, including the "why" Sonn was so obligated.

**b) Plaintiffs' fourth cause of action, fraudulent/intentional misrepresentation, cannot lie where the terms were express.**

Nevada Jury Instruction (NJI) 10.1 instructs, "Conduct may be fraudulent if any of the following occur: (1) an intentional misrepresentation ...; and (4) a failure to disclose information (where there is a duty to disclose)."

**i) Intentional misrepresentation.**

NJI 10.2, "Intentional Misrepresentation," requires the following elements.

"(1) The defendant made a representation as to a past or existing material fact; (2) This representation was false; (3) The defendant knew the representation was false when it was made; or (4) The defendant knew that [he] [she] did not hold sufficient information to make the representation; (5) The defendant intended to induce the plaintiff to rely upon the false representation and act or to refrain from acting accordingly; (6) The plaintiff was unaware of the falsity of the representation; (7) The plaintiff acted in reliance upon the truth of the representation; (8) The plaintiff was justified in relying upon the representation; and (9) The plaintiff sustained damages as a result of [his] [her] reliance on the misrepresentation." *Emphasis added.*

NRS 10.9, "Justifiable Reliance," states:

"In order for the plaintiff to establish that [he] [she] [it] justifiably relied on the false representation or promise, the plaintiff must show: (1) The representation or promise played a substantial and material part in influencing the plaintiff's course of action; and (2) None of the facts surrounding the transaction would serve as a danger signal indicating a falsehood to a normal person of the plaintiff's intelligence and experience; (3) The misrepresentation or promise need not be the sole cause of the plaintiff's actions if it appears that the reliance upon the representation or promise substantially influenced the party's action, even though other influences operated as well; and (4) The plaintiff does not have a

---

*KPG and Getty v. Sonn, Sonn v. Getty et al.*, Case No. 3:22-cv-00236-ART-CLB
Sonn Motion to Dismiss KPG's and Kendalle's FAC – 13

duty to investigate if there are no facts in the surrounding circumstances that should alert the plaintiff of potential fraud."

The KPG FAC alleged Sonn "falsely represented" to KPG's President that the SIAL was "standard" and to "corroborate and substantiate" the FIAL. (ECF No. 105, ¶ 105.) Plaintiffs failed to specify the "who, what, when, where, and how" of the fraudulent actions – or why. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003); *Takiguchi v. MRI Int'l, Inc.*, 47 F. Supp. 3d 1100, 1110–11 (D. Nev. 2014).

Further, Sonn's *opinion* about her employment terms with KPG cannot be fraud. "[O]pinion is not actionable as fraud unless the person making the statement has specialized knowledge upon which another party is entitled to rely." *Lui Ciro, Inc. v. Ciro, Inc.*, 895 F. Supp. 1365, 1376 (D. Haw. 1995). There was no allegation that Sonn had specialized knowledge about employment contracts. The FAC claimed KPG needed to attorney review of the SIAL, and thus admitted there was no justifiable reliance.

Next, there was only a conclusory allegation that the SIAL was *not* standard. Various unnamed individuals allegedly claimed it was "unusual," but there was no allegation that any knowledgeable authority believed this. The FIAL did corroborate and substantiate the FIAL on its face, and to any extent that it did not, the terms were express. In fact, most of the terms are the same, including the basis points as 25 points of the trust. There was no allegation of "*why* the conduct was fraudulent," as in, why the SIAL was not standard. *Takiguchi* at 1110–11, *emphasis added*. This does not reach the heightened pleading standard required for fraud.

Where express terms contradict supposed misrepresentations, fraud cannot lie. *Rd. & Highway Builders v. N. Nev. Rebar*, 128 Nev. 384, 386 (2012). Importantly, KPG received the express terms. Sonn had no duty to explain the terms to KPG but only to disclose them. The 2015 Employment Agreement vested all discretion as to the bonus to the sole Director of KPG. If KPG, who had sole discretion, disliked the terms, it was KPG's responsibility to not sign and renegotiate if it so wished. KPG had a fiduciary duty to the corporation. Instead, KPG manifested assent.

The FAC alleged Sonn falsely represented the amount of her bonus under the SIAL, which was a percentage of the total Pleiades Trust. (*Id.*, ¶ 106.) The express terms stated $2.5 million and a percentage of the trust. Thus, KPG knew the terms and cannot assert fraud where the terms were express.

In addition, there is at least one allegation showing "the [alleged] facts surrounding the transaction would serve as a danger signal indicating a falsehood to a normal person of the plaintiff's intelligence and experience." That is, Plaintiffs admitted that the KPG President believed "the amounts Sonn was requesting (which Kendalle believed to be $2 million based on the discussion with Sonn) were quite steep, and asked for time to think about the request." (ECF No. 105, ¶ 50.) Further, this would have alerted the President to possible fraud (although the amount was express in the SIAL). Therefore, Plaintiffs cannot show justifiable reliance.

### ii) Fraud by nondisclosure.

Plaintiffs alleged Sonn "omitted facts," and included only the undisclosed fact that the terms were supposedly not in Plaintiffs' best interests. (*Id.*, ¶ 107.) Again, this is not pleaded with the necessary particularity. In addition, NRS 78.138(1) is discussed above and applies here because it governed Sonn's duty to Plaintiff KPG. In short, Plaintiffs must rebut the business judgment rule, which they failed to do as explained above. Moreover, Sonn had no duty to explain whether the SIAL was standard or corroborative – she had only to disclose the terms, which she did.

There was no allegation Sonn owed a fiduciary duty to Kendalle regarding her role as President of KPG and if she did, she satisfied it by fully disclosing the SIAL.

### c) The fifth cause of action, negligent misrepresentation, fails because of unspecified facts and Sonn's full disclosure.

The fifth cause of action is negligent misrepresentation, where it is alleged that Sonn "supplied false information and failed to disclose material information she had a duty to disclose," in not relating to Plaintiffs whether the SIAL was fair, justified, and in their best interests.

Sonn was VP of KPG, and Plaintiffs cannot rebut the business judgment rule, as Sonn disclosed her financial interest. Sonn had no duty as a financial advisor to Kendalle in her role as KPG President. If she did, her duty again was to disclose her financial interest, which she did. This claim requires justifiable reliance. Plaintiffs' allegations show Plaintiffs were aware of a supposed "danger signal,' *supra*.

### d) The sixth cause of action, pleading rescission, fraudulent inducement, unconscionability, undue influence, fail due to full disclosure or a lack of fiduciary duty regarding the SIAL.

### i) Rescission.

The FAC alleged that Sonn's supposed false representation was that the SIAL was fair, justified, and in KPG and Kendalle's best interests, and this should result in rescission. Again, there can be no fraud where the express terms are disclosed. Fraud is discussed above. It cannot lie due to full disclosure of the express terms and the BJR.

### ii) Fraudulent inducement cannot lie where the terms are express and disclosed.

Plaintiffs alleged that "Sonn made false representations to Plaintiffs regarding the nature of the Second Incentive Award Letter, including facts related to the Second Incentive Award Letter. Specifically, Sonn represented that the terms of the Second Incentive Award Letter were fair, justified, and in the best interests of KPG and Kendalle." As to the "best interests" issue, Plaintiffs cannot rebut the Business Judgment Rule. The SIAL was a business decision and fully disclosed.

In addition, "when a fraudulent inducement claim contradicts the express terms of the parties' integrated contract, it fails as a matter of law." *Rd. & Highway Builders v. N. Nev. Rebar*, 128 Nev. 384, 386 (2012). Here, the terms were in the written agreement. "[T]he law precludes assertions of fraud when the alleged misrepresentation is contradicted by the parties' bargained-for terms." *Id.* at 380.

The allegations do not support that Sonn had a fiduciary duty to Kendalle in her role as President of KPG. Nor can Kendalle show a violation of NRS 628A.020 because Sonn disclosed her financial interest.

### iii)    The SIAL was procedurally and substantively sound and thus not unconscionable.

"A contract clause is not enforceable against a party if:

1. The party lacks a meaningful opportunity to agree to the clause, either because of unequal bargaining power or because the clause and its effects are not readily ascertainable upon a review of the contract (due, for example, to fine print, the provision's inconspicuous location, or complicated, incomplete, or misleading language that fails to inform a reasonable person of its consequences or the party's important rights); and

2. The clause is significantly one-sided, granting the other party rights and benefits not available to both parties on a bilateral basis and imposing burdens not fully disclosed to the party resisting enforcement." NJI 13.27.

"To prevent enforcement, the party arguing unconscionability must establish both procedural and substantive unconscionability." *Phillips v. Valley View Surgical, LLC*, 137 Nev. 951 (Nev. App. 2021).

### (1) The first prong: procedural unconscionability.

"Procedural unconscionability concerns the manner in which the contract was negotiated and the respective circumstances of the parties at that time, focusing on the level of oppression and surprise involved in the agreement. [*Citations omitted*.] Oppression addresses the weaker party's absence of choice and unequal bargaining power that results in no real negotiation. Surprise involves the extent to which the contract clearly discloses its terms as well as the reasonable expectations of the weaker party." (*Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916, 922 (9th Cir. 2013).)

Procedural unconscionability is evidenced by offers on a "take it or leave it" basis, such as an adhesion contract, where the weaker party is not given an opportunity to negotiate. *Cir. City Stores, Inc. v. Adams*, 279 F.3d 889, 893 (9th Cir. 2002)(Circuit City's adhesion contract, "drafted by the party with superior bargaining power [Circuit City]" was "a prerequisite to employment and job applicants are not permitted to modify the agreement's terms—they must take the contract or leave it.")

"[W]e have declined to apply the adhesion contract doctrine to employment contracts because such contracts can generally be negotiated ... and [plaintiff] White did not claim that Tesla told him that the terms of the offer letter were nonnegotiable." *White v. Second Jud. Dist. Ct. in & for Cnty. of Washoe*, 543 P.3d 107 (2024).

1    In addition to a "take it or leave it" basis, the court "found that the terms of the

2    policy were not provided to Chavarria until three weeks after she had agreed to be

3    bound by it." (*Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916, 922 (9th Cir. 2013); *see*

4    *also Burch v. Second Jud. Dist. Ct. of State ex rel. Cnty. of Washoe*, 118 Nev. 438, 443

5    (2002), terms not disclosed to consumer at time of signing.)

6    The Nevada Supreme Court references as procedurally unconscionable a case

7    where "the employer required immediate signatures in hectic circumstances that did not

8    give the employees a meaningful opportunity to understand what they were signing."

9    *Tough Turtle Turf, LLC v. Scott*, 537 P.3d 883, 886 (2023). In that case, the employer

10   surprised employees with the agreement when they arrived for work, required

11   employees to sign it in a "dimly lit and noisy entryway," "imposed a time constraint,"

12   prohibited employees "both from removing the documents from the Men's Club to

13   review and from working pursuant to their existing contractual agreement until they

14   signed the documents ... .'" *FQ Men's Club, Inc. v. Doe Dancers I*, 136 Nev. 809 (2020)."

15   "[W]e acknowledge that the employee is the weaker party to the agreement."

16   *Quilloin v. Tenet HealthSystem Philadelphia, Inc.*, 673 F.3d 221, 237 (3d Cir. 2012).

17   Here, there was no allegation that the 2 page, 7 paragraph, 12 point font 2021

18   SIAL was complicated or misleading. Rather, Plaintiffs alleged there was unequal

19   bargaining power because (1) Sonn was aware of Kendalle's "personal circumstances,"

20   with the one example being the undefined anniversary of a family member's death, (ECF

21   No. 105, ¶¶ 48, 53), (2) that Kendalle trusted Sonn because Sonn "befriended and gained

22   her trust" "over years" (ECF No. 105, ¶ 54), and that Sonn "pressured" Kendalle to sign

23   the SIAL, which she did in three days. (*Id.*, ¶ 57).

24   First, here the SIAL was between KPG and Sonn. The BJR will apply to protect

25   KPG and Sonn's fully disclosed business decision. If the Court finds the SIAL was

26   between Sonn and Kendalle, the same reasoning below applies.

27   There was no unequal bargaining power between the employer and Sonn. Sonn

28   was the employee, established as the party with weaker bargaining power. *Quilloin* at

237. There was no allegation Sonn asserted a "take it or leave it" basis. In fact, it was KPG who could have taken the SIAL, left it, or bargained it as it had all the power as the employer in this employer-employee relationship.

KPG had opportunity to meaningfully negotiate the SIAL and there was no allegation of surprise. Instead, Sonn raised that she wished to renegotiate in early March, presented the short and simple SIAL on March 14, 4021, and then KPG took the time it needed to review, and then agree to the SIAL. (ECF No. 105, ¶¶ 32-33, 57.)

The FAC alleged KPG did in fact engage in negotiation. KPG President Kendalle expressed that the payment that she supposedly believed was at issue was "quite steep" and asked "for time to think about the request." (ECF No. 105, ¶ 50.) While the KPG FAC alleged Sonn pressured her to sign, it could not allege that Sonn "imposed a time constraint." (*FQ Men's Club* at 809.)

There was no allegation of any adverse action Sonn would take if KPG did not sign, unlike in *FQ* and *Chavarria* where the employee could not work if they did not sign. There was no allegation Sonn told KPG the terms were non-negotiable, unlike in *White*, and the presumption is that employment agreements are negotiable. Indeed, this was a renegotiation of the astoundingly one-sided FIAL.

There was no allegation Sonn prohibited Plaintiffs from reviewing the document, unlike *Chavarria*. Notably, unlike in *Chavarria*, Sonn provided the complete contract for KPG to review before signing. *Chavarria* at 922. KPG was on notice of the simple and disclosed terms in the SIAL. Finally, the FAC does not identify sufficient facts surrounding the purportedly "stressful issues in [Kendalle's] personal life" on which it is based (FAC ¶ 48), only a death anniversary without timing or identification of the death or the other "stressful issues." In any case, the contract was with KPG, not Kendalle.

**(2) The second prong: substantive unconscionability.**

The second prong, "[s]ubstantive unconscionability," "concerns the contract terms themselves and whether those terms are unreasonably favorable to the more powerful party, such as terms that impair the integrity of the bargaining process or

otherwise contravene the public interest or public policy." *Tough Turtle Turf, LLC v. Scott*, 537 P.3d 883, 885–86 (2023). Substantive unconscionability centers on the "terms of the agreement and whether those terms are so one-sided as to shock the conscience." *Ingle v. Cir. City Stores, Inc.*, 328 F.3d 1165, 1172 (9th Cir. 2003)

Here, Plaintiffs appeared to allege the following clauses in the 2021 SIAL were substantively unconscionable: (1) calculation of the amount as a percentage of the entire trust (0.0025% of trust), (2) that payment be made to Sonn in three installments from March 2021 to March 2023, and (3) if KPG terminated Sonn, for any reason, the unpaid balance would be accelerated and paid on next payment date or within 30 days of termination, whichever is sooner.

At the outset, KPG was the stronger party as the employer, and the terms were not unreasonably favorable to KPG or Sonn.

Next, both award letters contemplated a 0.0025% payment of the entire Pleiades trust, so the SIAL does not change the calculation as an amount of the entire trust. In other words, the 2021 SIAL's 25 basis points of the total Pleiades trust was the same as the 2017 FIAL. (ECF No. 105-2, 105-3.) Plaintiffs did not allege the FIAL's 25 basis points of the entire trust was unconscionable and thus cannot do so here with the SIAL.

There was no allegation supporting that the timing of payments over two years was substantively unconscionable. Both the FIAL and SIAL asserted that the Trust was unfunded and unsecured, so if the Trust somehow became insolvent, KPG would not have to pay Sonn.

As to paying Sonn even if KPG terminated her for any reason, in exchange Sonn would waive her rights to sue. Sonn received security against an illegal, unjust, or capricious termination, and KPG received security against a lawsuit resulting from that. Moreover, KPG could still terminate Sonn for any reason after her then-six years of undisputedly excellent service, but Sonn would still receive her deferred compensation. These terms were fair and equitable.

1    Defendant could not find authority supporting that these terms were

2    substantively unconscionable. Rather, case law supported that contract terms with

3    "[t]he legitimate inference that [employer] fired [employee] to deprive him of his

4    pension reek[] of oppression and malice." *K Mart Corp. v. Ponsock*, 103 Nev. 39, 52

5    (1987), *abrogated on other grounds by Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133

6    (1990). While the employee in *Ponsock* was not at-will, the reasoning stands that terms

7    that allow an employer to terminate an employee in order to deprive her of earned

8    deferred compensation, as in the FIAL, are unfair, inequitable, and in bad faith.

9    Notably, the SIAL which KPG signed and paid the first payment stated that KPG

10   has the authority to interpret the SIAL, as long as it did so in good faith. These are

11   simple, understandable terms written in plain English. KPG interpreted the agreement

12   in good faith and signed.

13   Here, neither prong of unconscionability was met. Plaintiffs cannot cure that the

14   agreement was not unconscionable. The terms of the incentive agreements are express,

15   undisputed, and part of the FAC. The undisputed facts that KPG had a meaningful

16   opportunity to negotiate when it asked for time to think and received it, no time limit,

17   no threat of adverse action, employer-employee relationship, and no suggestion the

18   terms could not be negotiated, cannot support procedural unconscionability. Therefore,

19   this Court may determine whether there was unconscionability. *Lehrer McGovern*

20   *Bovis, Inc. v. Bullock Insulation, Inc.*, 124 Nev. 1102, 1115 (2008), "When the facts in a

21   case are not in dispute, contract interpretation is a question of law … ."

22   **iv) Undue influence.**

23   The FAC alleged undue influence, again citing Kendalle's "circumstances" and

24   Sonn's fiduciary relationship with her, and that the SIAL terms were grossly unfair and

25   one-sided against Kendalle. (KPG FAC, ¶¶ 130-131.) However, as explained above, the

26   allegations do not support that Sonn had a fiduciary duty to Kendalle in KPG's

27   determination of compensation to its employee Sonn. There was no allegation that Sonn

28   was a personal financial advisor to Kendalle regarding her role as President of KPG.

Rather, the FAC stated that Sonn's role was to provide financial advice to KPG, which she fulfilled by disclosing the SIAL as per the BJR.

Even if Sonn did have a fiduciary duty to Kendalle as President of KPG, she fulfilled it because the transaction was just, fair, equitable, and fully and fairly disclosed.

NJI 13.25 reads in relevant part,

"Undue influence from moral, social, or domestic forces exerted upon the party controlling the free action of their will and preventing a true voluntary consent to the contract's terms, particularly if the party was peculiarly susceptible and yielding due to their condition and circumstances, such as a dependent relationship with the person exerting the influence, mental or physical weakness, pecuniary necessities and/or ignorance and lack of independent advice.

If there was an already-existing fiduciary or other relationship in which the party reposed trust and confidence in another party to the contract, then undue influence is presumed and the party seeking to enforce the contract must prove by clear and convincing evidence that the party against whom enforcement is sought had independent legal advice on the transaction before assenting to it or the transaction was just, fair and equitable and fully and fairly disclosed to that party."

As discussed above, Sonn had no fiduciary duty to Kendalle as President of KPG.

However, even if the Court applied the fiduciary duty presumption in the Jury Instruction to Sonn towards Kendalle as a non-party to an employment agreement between Sonn and KPG, there was no undue influence because Sonn fully and fairly disclosed the SIAL by providing it, and the terms are just, fair, and equitable, as described above. Further, the case law supporting the Jury Instruction is *Peardon v. Peardon*, 65 Nev. 717 (1948) and considers a spousal relationship where the wife was the weaker party. Importantly, in this contract between Sonn and KPG, Sonn was the employee, established as the weaker party. *Quilloin* at 237. This Jury Instruction does not apply because it was an employment agreement between KPG and Sonn.

**v) The seventh cause of action, contractual breach of the implied covenant of good faith and fair dealing, fails because Sonn disclosed the terms.**

"In every contract or agreement there is an implied promise of good faith and fair dealing. This means that each contract impliedly agrees not to do anything to destroy or

---

injure the right of the other party to receive the benefits of the contract. Thus, each party has the duty not to prevent or hinder performance by the other party." NJI 16.1.

The FAC alleged here that Sonn breached the covenant of good faith and fair dealing implied in the FIAL by performing in a manner unfaithful to its purposes. Allegedly, Sonn breached her fiduciary duties, misrepresented material facts to Kendalle regarding the SIAL, concealed material facts that she had a duty to disclose to Kendalle, and circumvented the terms of the FIAL.

The contract was between KPG and Sonn, not Kendalle. As explained above, the allegations show Sonn did not breach her Officer duties to KPG because she fully disclosed. If the Court finds the contract was with Kendalle, Sonn did not breach under under NRS 628A.020, as she disclosed any gain from the SIAL. As to misrepresentation or concealment, "the law precludes assertions of fraud when the alleged misrepresentation is contradicted by the parties' bargained-for terms." *Rd. & Highway Builders v. N. Nev. Rebar*, 128 Nev. 384, 386 (2012). Here, the terms were in the business decision written agreement.

Plaintiffs do not further explain how Sonn allegedly circumvented the terms of the FIAL. The FIAL stated that KPG could "amend … the Incentive Award … at any time," which it did when Plaintiffs signed the SIAL. (ECF No. 105-2, "General Terms.") An employment agreement is presumptively negotiable, and Sonn and KPG negotiated a new one that was fair and equitable, unlike the oppressive and one-sided FIAL.

### vi) The eighth claim, tortious breach of the implied covenant of good faith and fair dealing, fails because there was no fraud.

"A breach of the implied covenant of good faith and fair dealing is a tort only when there exists an enforceable contract, a special relationship of trust and special reliance between the parties, and the conduct in question goes well beyond the bounds of ordinary liability for breach of contract." The Court "limited bad faith tort actions to those cases involving special relationships characterized by elements of public interest,

adhesion, and fiduciary responsibility." *Great Am. Ins. Co. v. Gen. Builders, Inc.,* 113 Nev. 346, 355 (1997).

Again, there was no allegation Sonn had a fiduciary relationship with Kendalle in her role as President and sole director of KPG. The eighth cause of action alleged was in Sonn allegedly "seeking to remove the protections of Plaintiffs' legal rights set forth in the original Incentive Award Letter, preparing the Second Incentive Award Letter, misrepresenting the nature of the Second Incentive Award Letter, concealing material facts regarding the Second Incentive Award Letter, pressuring Kendalle to sign the Second Incentive Award Letter, and retaining funds paid as a result of her conduct." (ECF No. 105, ¶ 144.)

There was no fraud as the terms were express. The BJR protects this business decision that was fully disclosed. There was no time limit or adverse action threatened if KPG did not sign. Sonn properly received the deferred compensation payment as a result of her continued excellent work.

### vii) Unjust enrichment is not available where there was a contract, and even if there was no contract, there was no fraud or breach.

The ninth cause of action was for unjust enrichment, claiming Plaintiffs conferred a benefit on Sonn to which she was not entitled, without further explanation.

In Nevada, "[a]n action based on a theory of unjust enrichment is not available when there is an express, written contract, because no agreement can be implied when there is an express agreement." *Leasepartners Corp. v. Robert L. Brooks Tr. Dated Nov. 12, 1975,* 113 Nev. 747, 755 (1997).

"The [plaintiff] may recover the reasonable value of a benefit conferred on the [defendant] if the [defendant] knew of the benefit conferred, accepted the benefit and retention of the benefit is unjust without paying its reasonable value." NJI 13.12.

Unjust enrichment allegations must also show that the defendant "willingly received the plaintiff's labor or goods without giving *anything* of equal value in return." *US Bank, N.A. v. SFR Investment Pool 1, LLC,* WL 4473427, at *11 (D. Nev. 2016), *emphasis added.* Here, an express contract existed between KPG and Sonn and thus

unjust enrichment is not available. If the Court finds no legal contract existed, KPG cannot show that Sonn's retention of the deferred compensation employment agreement to which Sonn and KPG agreed was unjust. As stated in the SIAL, the payment was for Sonn's continued excellent work. KPG even signed the SIAL, "I look forward to continuing our great work together."

As to Kendalle and Sonn, there was no allegation that Kendalle paid Sonn. The FAC admitted, "KPG made the first bonus payment ... to Sonn ... ." (ECF No. 105, ¶ 60.) Thus, Kendalle conferred no benefit on Sonn.

In addition, Plaintiffs here alleged that Sonn's "responsibilities to KPG included managing investments and providing financial advice." (*Id.*, ¶ 18.) The FIAL and SIAL stated that the deferred compensation bonus was in exchange for the "valuable services [Sonn] continue[d] to provide." (ECF No. 105-2, 105-3.) The FAC confirmed that Sonn provided "valuable services" in exchange for the incentive award. Therefore, Plaintiffs failed to allege that defendant Sonn "willingly received the plaintiff's labor or goods without giving *anything* of equal value in return." *US Bank* at *11, and this claim fails.

**viii)  Declaratory relief is not a cause of action and its basis fails here.**

The tenth cause of action was for declaratory relief stating the SIAL is void due to Sonn's alleged fraudulent inducement, the allegedly unconscionable nature of agreement, and alleged undue influence; Plaintiffs are entitled to repayment; and Plaintiffs are not obligated to pay. As explained above, none of these find support in the allegations. The FAC should be dismissed.

**CONCLUSION**

The many claims here all fail. They are pleaded without sufficient particularity. Plaintiffs' confidentiality claims sound in tort and therefore Sonn's complaint is protected by litigation privilege, and the media reports by fair report privilege. The Second Incentive Award Letter (SIAL) was a business decision by KPG to employ Sonn as an Officer of KPG. Kendalle was not a party to this agreement. The business decision is protected as such, and because the terms were fully disclosed. Fraud cannot lie where

the terms are express, as here. The SIAL was fair, equitable, and fully disclosed. Therefore, the claims should be completely dismissed.

Respectfully submitted,

Dated: May 1, 2024               SIEGEL, YEE, BRUNNER & MEHTA

By: ___/s/ Sonya Z. Mehta_____
          Sonya Z. Mehta

Attorneys for Marlena Sonn