SONYA Z. MEHTA, SBN 294411
SIEGEL, YEE, BRUNNER & MEHTA
475 14th Street, Suite 500
Oakland, CA  94612
Telephone: (510) 839-1200
Facsimile: (510) 444-6698
sonyamehta@siegelyee.com
*Admitted pro hac vice*

RYAN A. HAMILTON, SBN 11587
HAMILTON LAW
5125 South Durango Drive
Las Vegas, NV 89113
702-818-1818
Ryan@HamLegal.com

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| KPG INVESTMENTS INC., a Nevada Corporation; KENDALLE GETTY, an individual,<br><br>          Plaintiffs,<br><br>     vs.<br><br>MARLENA SONN, AND DOES 1-20 ,<br><br>          Defendants.<br><br>———————————————<br><br>MARLENA SONN,<br>               Plaintiff,<br><br>     vs.<br><br>KENDALLE P. GETTY, as Trustee of the Pleiades Trust and as an individual, KPG INVESTMENTS, INC., as Trustee of the Pleiades Trust, ALEXANDRA SARAH GETTY, as Trustee of the Pleiades Trust and as an individual, ASG INVESTMENTS, INC., as Trustee of the Pleiades Trust, MINERVA OFFICE MANAGEMENT, INC., and ROBERT L. LEBERMAN,<br>          Defendants. | Consolidated case<br>3:22-cv-00236-ART-CLB<br><br>**DEFENDANT MARLENA SONN'S MPA ISO OPPOSITION TO KPG AND KENDALLE GETTY'S MOTION FOR PRELIMINARY INJUNCTION; FILED CONCURRENTLY WITH DECLARATION OF SONYA Z. MEHTA AND REQUEST FOR JUDICIAL NOTICE** |

*KPG and Getty v. Sonn, Sonn v. Getty et al.*, Case No. 3:22-cv-00236-ART-CLB
Sonn Opposition to KPG's and Kendalle Getty's Preliminary Injunction

# TABLE OF CONTENTS

INTRODUCTION...................................................................................... 1

SUMMARY OF ALLEGATIONS............................................................. 1

1) KPG employed Sonn as its Vice President in their 2015 Employment
Agreement....................................................................................... 1

2) Breach of confidentiality allegations................................................ 2

LEGAL STANDARD................................................................................ 5

1) The extraordinary remedy of a preliminary injunction, best applied to
undisputed facts where there is no adequate remedy of law.......................... 5

   a) Irreparable injury may not be speculative.................................... 6

      i) A remedy is available in contract claims................................ 7

   b) Movants must show a likelihood of prevailing on the merits..................... 7

   c) Movants must show the balance of harms tips towards them.................... 8

   d) Injunction must further the public interest. ................................. 8

   e) Specificity of order........................................................ 8

2) Mandatory injunction.................................................................... 8

ARGUMENT............................................................................................ 9

1) The 2015 Agreement was only between Sonn and KPG. There was no
confidentiality agreement between Sonn and Kendalle................................... 9

2) Movants' first request to enforce confidentiality provision is not supported
by any nonspeculative allegation of harm, fails due to their access to a
remedy at law, relies on an unenforceable provision, and harms Sonn and
the public.......................................................................................... 10

   a) There was no irreparable harm to KPG or Kendalle...................... 10

      i) KPG provided no evidence of harm and only speculation about
negative publicity............................................................ 10

   b) The alleged harm to Kendalle did not arise from the press at issue........... 11

   c) Plaintiffs admitted they can seek damages and thus have an adequate
remedy at law................................................................. 11

   d) Plaintiffs have not demonstrated likely success on the merits.................... 12

      i) This information was not confidential................................. 12

      ii) The clause is unenforceable as it is vague, overbroad, and against
           public policy.................................................................................... 12

   e) Sonn will be more harmed than Movants...................................... 14

   f) Public interest favors denial of the injunction............................. 14

3) The first through fourth requests seek a mandatory preliminary injunction
   that is incomprehensible and burdensome........................................... 14

   a) The law and facts do not "clearly favor" KPG or Kendalle........................... 15

   b) KPG or Kendalle will not suffer extreme or very serious damage................ 15

   c) The balance of equities favors Sonn.............................................. 16

   d) The public interest favors Sonn.................................................... 17

CONCLUSION............................................................................. 17

1

**TABLE OF AUTHORITIES**

2

**FEDERAL CASES**

3

*Colorado River Indian Tribes v. Town of Parker,* 776 F.2d 846 (9th Cir.

4
1985)..................................................................................... 6

5
*Garcia v. Google*, 786 F.3d 733 (9th Cir. 2015)................................. 9

6
*Goldie's Bookstore, Inc. v. Superior Ct. of State of Cal.*, 739 F.2d 466 (9th

7
Cir. 1984)............................................................................... 6

8
*Lipin v. Hunt*, WL 1344406 (S.D.N.Y. 2015)................................... 13

9
*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873

10
(9th Cir. 2009)......................................................................... 9

11
*Playup, Inc. v. Mintas*, WL 5763557 (D. Nev. 2021)........................ 10

12
*Reinhard v. Johnson*, 209 F.Supp.3d 207 (D.D.C. 2016)................... 6

13
*Regents of Univ. of Cal. v. Amer. Broadcasting Cos., Inc.*, 747 F.2d 511 (9th

14
Cir. 1984)............................................................................... 6, 7, 10

15
*Rent-A-Ctr., Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d

16
597 (9th Cir. 1991)................................................................... 7, 10

17
*Saini v. Int'l Game Tech.*, 434 F.Supp.2d 913 (D. Nev. 2006)........... 5, 6, 7,
8, 11,
12

18
*Union Pac. R. Co. v. Mower*, 219 F.3d 1069 (9th Cir. 2000)............. 7, 8, 10

19

20
*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008)................. 7, 8

21
**STATE CASES**

22
*Adelson v. Harris*, 133 Nev. 512 (2017) ..................................... 13

23
*Com. Cabinet Co. v. Mort Wallin of Lake Tahoe, Inc.*, 103 Nev. 238 (1987)... 7

24
*Gramanz v. T-Shirts & Souvenirs, Inc.*, 111 Nev. 478 (1995)........... 7

25
*Sahara Gaming Corp. v. Culinary Workers Union Local 226*, 115 Nev. 212

26
(1999)................................................................................... 13

27
**FEDERAL RULES**

28
Federal Rules of Civil Procedure, Rule 1...................................... 17

Federal Rules of Civil Procedure, Rule 26.............................................................   16

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## INTRODUCTION

Plaintiffs KPG Investments, Inc. (KPG) and Kendalle Getty (Kendalle) moved for preliminary injunction against Defendant Marlena Sonn. (ECF No. 162.) This Court should deny the motion because Plaintiffs evidenced no harm, the confidentiality clause is unenforceable, and the balance of equities and public interest tips towards Sonn.

## SUMMARY OF ALLEGATIONS

The Pleiades Trust ("Pleiades") was established for the benefit of Kendalle P. Getty ("Kendalle")[1] and others. (ECF No. 105, KPG and Kendalle First Amended Complaint (FAC), ¶ 12, filed July 10, 2023, amending March 16, 2022, Complaint.) KPG Investments ("KPG") is a trustee of Pleiades, and a corporation organized under Chapter 78 of the Nevada Revised Statutes and governed by the laws of Nevada. (*Id.*, ¶¶ 1, 13.) Kendalle was KPG's President and sole director. (*Id.*, ¶ 13; ECF No. 105-1, ¶ 2.1.)

### 1) KPG employed Sonn as its Vice President in their 2015 Employment Agreement.

On November 1, 2015, Sonn and KPG, not Kendalle, entered into an agreement ("2015 Employment Agreement") to employ Sonn as Vice President ("VP") of KPG. (*Id.*, ¶ 14, ECF No. 105-1, 2015 Employment Agreement, ¶ 1; *see also* ECF No. 162-1, Declaration of Kendalle P. Getty, ¶ 5, "Ms. Sonn and KPG entered into … agreement.") Sonn served KPG as a corporate officer. (ECF No. 105, ¶ 17.)

"Sonn was formerly employed as KPG and ASG's Vice President." (ECF No. 100, Order Denying Motion to Seal and Granting Motion to Amend, 2:2.)

The 2015 Employment Agreement (ECF No. 105-1) between Sonn and KPG contained the following provisions:

"1.2. Scope of Duties. To the best of Employee's ability, Employee shall faithfully, honestly and efficiently perform the duties assigned in accordance with the policies of the Corporation, the instructions of the sole director of the Corporation, and the employment standards set forth below in Section 1.5. …

---

[1] Kendalle P. Getty will be referenced by her first name in this consolidated action to avoid confusion between Getty family members who share the same last name.

1.5. Employment Standards. In the performance of Employee's duties under this Agreement, Employee shall adhere to such employment standards, ethical practices, and standards of care and competence as are customary for an *employee holding a similar position as a vice president of a corporation* serving as a trustee to a family trust.

12. Entire Agreement. This Agreement … contains the entire agreement and understanding of the parties with respect to the entire subject matter thereof … ." (*Id.*, *emphasis added*.)

The FAC alleged that Sonn was a Certified Financial Planner, whose responsibilities to KPG included managing investments and providing financial advice. (*Id.*, ¶ 18.) However, there was no allegation that the 2015 Employment Agreement or any other source committed Sonn to acting as a Certified Financial Planner or provider of financial advice to Kendalle as President of KPG, or to provide Kendalle personal financial advice under the 2015 KPG Employment Agreement. There was no allegation of any bylaws or policies related to Sonn's role at KPG.

Kendalle's declaration here, on the other hand, stated, "In her role as Vice President of KPG, Ms. Sonn provided advice, participated in Pleiades Trust trustee meetings, managed sensitive financial information related to KPG, the Pleiades Trust, and my own financial affairs." (ECF No., 162-1, ¶ 6, executed February 8, 2023.)

On November 30, 2021, KPG terminated Sonn. (ECF No. 105, ¶ 65.) At that time, Kendalle also terminated Sonn in "her relationship providing financial planning services to Kendalle." (*Id.*)

**2) Breach of confidentiality allegations.**

The 2015 Agreement between KPG and Sonn contained the following provision:

"Employee acknowledges the Corporation's right and title to all proprietary materials which constitutes all materials used in the Corporation's business, including financial information and reports relating to any trust for which the Corporation may serve as trustee and agrees not to disclose any such material to any third party except in the course of the duties of Employee on behalf of the Corporation or as may be required by court order or lawful subpoena, after reasonable notice to the Corporation." (*Id.*, ¶ 16.)

There was no allegation of any confidentiality agreement between Kendalle and Sonn in the FAC.

1    On April 5, 2022, Vanity Fair published a 20-page photo-article entitled, "*John*
2    *Galliano Gowns, Royal Ascot, and Kelp Farms: Meet the Fourth Generation of Gettys*,"
3    a "sneak preview" of the new book "*Growing Up Getty*." *See* Request for Judicial Notice,
4    Exhibit 1, pp. 1, 11-14; *see also* Declaration of Sonya Z. Mehta ("Mehta Decl."), ¶ 3. It
5    described Kendalle's family history including, "Billionaire Gordon Getty's secret family
6    of 4 revealed; S.F. socialite has 3 daughters; inheritance being negotiated." *See* RJN,
7    Exh. 1, p. 11. It discussed Kendalle's artwork at her Instagram account "@Freudian.slit,"
8    her founding of the "Angry Feminist Pin-Up Calendar," her publication of "The Gay
9    Agenda," a weekly planner; and her efforts "to promote empowered sexuality practices
10   and radically open artistic expression." *Id.*, pp. 11-14. It mentioned Johnny Latu, her
11   boyfriend and then-fiancé. *Id.* There are pictures of the two together on the Internet;
12   Latu is a brown-skinned person. *See* Mehta Decl., ¶ 4.

13   On May 11, 2022, Sonn filed a lawsuit against Plaintiffs in the U.S. District Court
14   of Eastern New York. (ECF No., 105, ¶ 67.) On June 21, 2022, the Los Angeles Times
15   published an article that Plaintiffs alleged cited "extensively" to the lawsuit. (*Id.*, ¶ 68.)
16   Plaintiffs failed to identify these citations. It alleged, without support, that Sonn
17   contacted a LA Times reporter to disclose the filing. (*Id.*)

18   On January 16, 2023, The New Yorker published an article about the lawsuit.
19   (*Id.*, ¶ 71; ECF No. 162-3, the New Yorker article ("NYA").) The FAC alleged that in the
20   NYA, Sonn shared information about Kendalle and KPG, including but not limited to,
21   "KPG's investment strategies, financial transactions and deliberations, taxes, and payout
22   expectations." (*Id.*, ¶ 72.) It alleged she gained this information while employed as
23   KPG's VP, and that she spoke to the New Yorker journalist Evan Osnos twice. (*Id.*, ¶¶
24   73-74.) Plaintiffs identified the so-called confidential information as follows.

25       "Sonn is quoted as the source for facts related to her employment with KPG,
26       communications between her and Kendalle, the specific amounts of money Sonn
         managed, tax strategies, and other sensitive financial information for both KPG
27       and the Pleiades trust. (*See id.* (describing Sonn's disclosure of information
         related to the 'complex . . . inner workings of the [Getty] family'; 'reshuffling of
28       more than $200 million' to redistribute trust fund shares following the death of
         Kendalle's sibling; strategy and corporate structure of entity created to manage

Kendalle's interest in Pleiades trust; KPG's methodology for considering investment decisions; exact amount of Kendalle's 'nest egg'; and detailed information regarding tax strategies for both KPG and the Pleiades trust).)" (ECF No. 162, 5:2-12.)

On February 8, 2023, Plaintiffs filed for preliminary injunction. (ECF No. 48.) Therein, Kendalle declared, "It appears Ms. Sonn disclosed facts in an incomplete or misleading manner to The New Yorker reporter and caused the article to portray me in a negative light." (ECF No. 48-1, ¶ 14; 162-1, ¶ 14.) The FAC alleged no harm to KPG, but harm to Kendalle because she received messages Plaintiffs believed were due to the article. (*Id.*, ¶ 75.) Kendalle declared she received these email messages through her public website two days after NYA. (ECF No. 162-1, ¶ 15.) The only example stated,

"Ugly tranny looking whore with ugly face and body and your ugly friends are trash like your ugly pedo looking fag bf and that other skinny brown illegal is trash too. Like that ugly pathetic honkie suck a ugly dick ugly bitch."

The NYA published no pictures of Kendalle. There was no mention of her romantic involvements, friends, or any person of color involved with Kendalle, except Marlena Sonn, who is not pictured either. Kendalle's public website contains her boundary-pushing art. *See* RJN, Exhibit 2, pp. 1-6 of exhibit; Mehta Decl., ¶ 5. In her "About" page, Kendalle noted her support for progressive causes. RJN, Exh. 2, pp. 7-10. There is a "news" section of the website with press hits. *Id.*, pp. 10-16.

On April 13, 2023, this Court issued an order granting a stipulated Protective Order. (ECF No. 96.) The Order required parties to mark confidential information as such and provided for a process to challenge such designations. In August 2023, Sonn sent a voluminous document production to Movants who have yet to label any of those documents "confidential." Mehta Decl., ¶ 6.

Plaintiffs have not alleged any disclosures since the NYA was published in February 2023, over a year ago.

Here, Plaintiffs moved for an order for the following, binding Sonn and her agents and effective during the pendency of this suit:

(a) enforcing the confidentiality clause in Sonn's Employment Agreement;

---

(b) compelling Sonn to provide a sworn accounting of all of her disclosures of covered confidential information as defined in the Agreement within 14 days of the entry of order;

(c) compelling Sonn to turn over to the Movants all copies of written covered confidential information as defined in the Agreement in her possession within seven days; and

(d) compelling Sonn to refrain from using any confidential information as defined in the Agreement except in the course of this litigation, subject to "a protective order." (ECF No. 162, 2:1-3:2.)

## LEGAL STANDARD

**1) The extraordinary remedy of a preliminary injunction is best applied to undisputed facts where there is no adequate remedy of law.**

A party seeking a preliminary injunction must show,

"1. the moving party will suffer irreparable injury if injunctive relief is not granted;
2. the moving party will probably prevail on the merits;
3. in balancing the equities, the non-moving party will not be harmed more than the movant is helped by the injunction; and
4. granting the injunction is in the public interest."
*Saini v. Int'l Game Tech.*, 434 F.Supp.2d 913, 918 (D. Nev. 2006).

"[A] preliminary injunction should only be granted if the movant does not have an adequate remedy at law." *Id.* at 918-919. It is an "extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Id.* at 919. "The cases best suited to preliminary relief are those in which the important facts are undisputed, and the parties simply disagree about what the legal consequences are of those facts." *Id.*

In *Saini,* IGT hired Saini as a technical trainer. *Id.*, 916. Saini agreed,

"(a) That during his employment and thereafter he will hold in strictest confidence, and not disclose to any person, firm, or corporation, without the express written authorization of an officer of [IGT] any information, manufacturing technique, process, formula, development or experimental work, work in process, business, trade secret, or any other secret or confidential matter relating to the products, sales, or business of [IGT] or its affiliates or subsidiaries

---

*KPG and Getty v. Sonn, Sonn v. Getty et al.*, Case No. 3:22-cv-00236-ART-CLB
Sonn Opposition to KPG's and Kendalle Getty's Preliminary Injunction – 5

except as such disclosure or use may be required in connection with [Saini's] work for [IGT]." *Id.*

IGT terminated Saini on suspicion that he was removing confidential information without permission. *Id.*, 917. Meanwhile, IGT was suing the Siena Hotel Spa and Casino ("The Siena") to collect on unpaid invoices. *Id.* The Siena responded with the assertion that IGT's products in question were defective. *Id.* Saini learned about this in the news and approached The Siena to offer himself as an expert witness. *Id.*

He provided internal IGT communications summarizing malfunction reports and analysis, "re-work" instructions stamped "confidential"; an internal memo he wrote identifying the machine problems which the court labelled an "expert report" and which Saini had provided to an IGT competitor, and his testimony that IGT placed used parts in equipment sold as new. *Id.*

### a) Irreparable injury may not be speculative.

The court held that Saini would create irreparable injury to IGT because he disclosed trade secrets which deprived IGT of a property interest and allowed its competitors to reproduce work without investing the same time and interest. *Id.*, 919. However, it held there was no harm as to damage to IGT's reputation and customer relationships, or enablement of fraud and theft by people who would use the information to tamper with devices. *Id.*, 919. These were "too speculative to support a finding of irreparable injury," as plaintiff failed to present evidence of damage to customer relationships, and the threat of fraud was too remote. *Id.*

Indeed, "speculative injury does not constitute irreparable injury." *Colorado River Indian Tribes v. Town of Parker,* 776 F.2d 846, 849 (9th Cir. 1985); *see also Reinhard v. Johnson*, 209 F.Supp.3d 207, 220 (D.D.C. 2016), "[T]he showing of reputational harm must be concrete and corroborated, not merely speculative." The loss of goodwill, without factual allegations, is also too speculative. *Goldie's Bookstore, Inc. v. Superior Ct. of State of Cal.*, 739 F.2d 466, 472 (9th Cir. 1984).

*Saini* held that damage to reputation is not irreparable injury. *Saini*, 919. *Regents of Univ. of Cal. v. Amer. Broadcasting Cos., Inc.*, 747 F.2d 511 (9th Cir. 1984) found

intangible and irreparable injury where a football television contract with some colleges injured non-included colleges' intangible interests in recruiting, alumni support, and national ranking. *See also Rent-A-Ctr., Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991), "The advertising efforts and goodwill that RAC sought to protect are similar to the recruitment efforts and goodwill in *Regents.*"

*Saini* at 919 noted, "Disclosure of non-trade secret confidential information is similarly recognized as a serious harm." It cited *Union Pac. R. Co. v. Mower*, 219 F.3d 1069 (9th Cir. 2000). There, the court found irreparable damage in a former employee's disclosure of his report of how the company injured its workers because "because such information "may be used ... in a number of lawsuits against [UP]." *Id.*, 1072.

### i) A remedy is available in contract claims.

In *Gramanz v. T-Shirts & Souvenirs, Inc.*, 111 Nev. 478, 485 (1995), the court ruled that since there was no non-speculative evidence of loss of T-shirt sales in shareholder's claim against another shareholder for breach of covenant not to compete, the award would be reduced to only nominal damages. "A plaintiff who proves a right to damages without proving the amount as well is only entitled to nominal damages." *Com. Cabinet Co. v. Mort Wallin of Lake Tahoe, Inc.*, 103 Nev. 238, 240 (1987).

### b) Movants must show a likelihood of prevailing on the merits.

In *Saini,* the court found that "IGT has carried its burden of proving that the information is economically valuable and not generally known to the public, which fulfills the definitions of both a trade secret and confidential information." *Saini* at 924. In that case, one document was labelled "confidential," and the information went to the heart of how the devices functioned, which was economically valuable.

Defendant *Saini* contended the clause was unenforceable due to public policy. The court identified "three different situations where such agreements might not be enforceable: (1) if the interest in the agreement's enforcement is outweighed in the circumstances by a public policy harmed by enforcement of the agreement, (2) if the agreement is being used by one party within the context of litigation to suppress an

adverse party's access to evidence, and (3) if the employee is disclosing an illegal or wrongful act for a purely public purpose, such as whistleblowing." *Id.*, 923.

Saini's decision to disclose to a party adverse to IGT proved breach of the implied covenant of good faith and fair dealing attached to those agreements because it evidenced a deliberate intent to violate the spirit of the agreements. *Id.*, 924.

**c) Movants must show the balance of harms tips towards them.**

In *Saini,* Saini's only harm would be loss of his witness fees. *Id.*, 925. "The policy against the imposition of judicial restraints prior to an adjudication of the merits becomes more significant when there is reason to believe that the decree will be burdensome." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 27, (2008).

**d) Injunction must further the public interest.**

The final test is the public interest inquiry. "[T]here is no public interest against enforcing the agreement where an individual has taken it upon himself to disclose confidential information solely for pecuniary gain." *Saini*, 925.

**e) Specificity of order.**

An overbroad injunction is impermissible. In *Union Pac. R. Co. v. Mower*, 219 F.3d 1069, 1077 (9th Cir. 2000), the appellate court held that the district court's findings of fact and conclusions of law specifically identified only a single study conducted by defendant."[G]iven the multitude of tasks and subjects [Defendant] must have addressed during his tenure at [Plaintiff-employer], the injunction's lack of specificity and its reliance on just the study and position paper to support its broad prohibitions are fatal flaws." *Id.*

**2) Mandatory injunction.**

The legal standard for granting a disfavored mandatory injunction requires a more stringent showing than for a prohibitory injunction. *Winter v. Nat'l Resources Defense Council, Inc.*, 555 U.S. 7 (2008), is thus modified to require the movant to show: (1) the law and facts "clearly favor" its position (rather than that it is merely likely to succeed); (2) movant will suffer irreparable harm that is "extreme or very serious

damage" in the absence of injunctive relief; (3) the balance of equities clearly favors movant; and (4) an injunction is in the public interest. *Garcia v. Google*, 786 F.3d 733, 740 (9th Cir. 2015); *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009).

## ARGUMENT

**1) The 2015 Agreement was only between Sonn and KPG. There was no confidentiality agreement between Sonn and Kendalle.**

KPG and Sonn signed the 2015 Employment Agreement with the confidentiality clause at issue. Plaintiffs' first cause of action alleged only the 2015 Agreement as the source of any duty of confidentiality. (ECF No. 105, ¶¶ 76-85.) The second cause of action pleaded that Sonn breached the implied covenant of good faith and fair dealing by contravening the Agreement with KPG, and nothing else. (ECF No. 105, ¶ 89.)

The 2015 Agreement stated, "Sonn's breach of the Employment Agreement caused anonymous individuals to send Kendalle offensive and threatening messages." *Id.*, ¶ 82. However, the 2015 Agreement limits Sonn's duties to that of a Vice President to a corporation. There was no allegation that such a role included personal financial advice to the Directors of the corporation, nor does the law support such a reading.

While Kendalle declared the agreement created a personal duty from Sonn towards her, the Agreement stated that it was the "Entire Agreement," ECF No. 105-1, ¶ 12, and there was no language therein supporting a personal duty. There was no allegation of any agreement with Kendalle. Therefore, Sonn's confidentiality agreement was only with KPG, not Kendalle.

Thus, the disclosure of "communications between [Sonn] and Kendalle," money she managed for Kendalle personally, Kendalle's nest egg, and any other information about Kendalle in the articles cannot be properly considered here as covered by the 2015 Agreement.

1
2

**2) Movants' first request to enforce confidentiality provision is not supported by any nonspeculative allegation of harm, fails due to their access to a remedy at law, relies on an unenforceable provision, and harms Sonn and the public.**

3

4

Plaintiffs' first request is to enforce the confidentiality provision through

5

preliminary injunction.

6

**a) There was no irreparable harm to KPG or Kendalle.**

7

**i) KPG provided no evidence of harm and only speculation about negative publicity.**

8

9

KPG provided no evidence of any harm to the corporation. At best, KPG

10

speculated that there could be "negative public exposure," with no evidence of this. (ECF

11

No. 162, 5:41-18.) Even the message to Kendalle, to which Sonn had no duty as pleaded,

12

was directly to her and not public.

13

In any case, KPG could not show reputational harm at all. It failed entirely to

14

meet the standard set by *Regents* and *Rent-A-Ctr*, which presented losses in advertising

15

and recruiting, which KPG cannot show. KPG cannot and did not offer concerns about

16

increased lawsuits as in *Union Pacific*. No one has standing to sue KPG except perhaps

17

Kendalle. Thus, the harm alleged here is entirely speculative and without any

18

corroboration and the motion fails.

19

*Playup, Inc. v. Mintas*, WL 5763557, at *4–6 (D. Nev. 2021) does not support

20

KPG. There, "Plaintiff has thus shown that allowing Defendant to continuously spread

21

disparaging comments concerning PlayUp, Inc. will likely result in immediate and

22

irreparable injury to Plaintiff in the form of loss of income, loss of goodwill, damage to

23

its reputation, and damage to its business relationships." Here, Movants alleged no loss

24

of income, no customers who could lose goodwill, only mere speculation about negative

25

publicity, and no business relationships. In addition, the court found harm to Playup

26

from breach of non-disparagement, not present here.

27

The Getty family trusts do not make or sell any product or service to the general

28

public. They therefore have no customer base or non-public know-how to protect.

Movants did not accuse Sonn of taking or using the supposedly "confidential"

---

*KPG and Getty v. Sonn, Sonn v. Getty et al.*, Case No. 3:22-cv-00236-ART-CLB
Sonn Opposition to KPG's and Kendalle Getty's Preliminary Injunction – 10

information for her own monetary gain. There is simply no comparison between the concrete commercial harms the courts have prevented through prohibitory injunctions and the speculation about negative press concerning an inheritance trust here.

**b) The alleged harm to Kendalle did not arise from the press at issue.**

Movants failed to cite any case law establishing that the messages, of which there was only one evidenced, satisfied the irreparable harm standard.

The harm alleged to Kendalle is simply too speculative to warrant a preliminary injunction, especially where there was no contractual duty pleaded as here. The one email cited made no mention of wealth or alleged tax evasion and thus had no connection to the NYA or LA Times article. The sole email referenced Kendalle's appearance, her boyfriend ("bf"), and a person with brown skin, none of which are discussed or pictured in the NYA, but which *Vanity Fair* wrote about, her website shows, and in the case of Latu, pictures are easily found on the Internet.

Kendalle's public art is provocative and she and the Gettys receive constant press, including with her photo, photos of her brown-skinned romantic partner, and friends. It is more likely the offending comment was a reaction to her constant presence in the media. In this context, timing alone is too speculative and remote. Unfortunately, the one private message cited is par for the course for any woman who simply exists on the Internet, let alone one who is famous and produces outré art like Kendalle.

**c) Plaintiffs admitted they can seek damages and thus have an adequate remedy at law.**

"[A] preliminary injunction should only be granted if the movant does not have an adequate remedy at law." *Saini* at 918-919. Plaintiffs admitted they have an adequate remedy at law if there claims prevail in at least nominal damages. (ECF No. 162, 8:12-26.) Thus, this Court need not impose this extraordinary measure.

**d) Plaintiffs have not demonstrated likely success on the merits.**

**i) This information was not confidential.**

In *Saini,* the court noted that IGT carried its "burden" to show "the information [disclosed was] economically valuable and not generally known to the public, which

---

*KPG and Getty v. Sonn, Sonn v. Getty et al.*, Case No. 3:22-cv-00236-ART-CLB
Sonn Opposition to KPG's and Kendalle Getty's Preliminary Injunction – 11

fulfills the definitions of both a trade secret and confidential information." *Saini* at 924. The Gettys are world-famous for their outsized wealth. It is public knowledge that Kendalle's father Gordon Getty is a billionaire, and Kendalle is an heir to that wealth. *See* Request for Judicial Notice, ¶ 1, Exhibit 1, *Vanity Fair* article.) Thus, that Sonn managed millions of dollars, including reshuffling millions after a death, are reasonable inferences that the public would make from facts "generally known" to it. *Saini* at 924.

Nor was this information "economically valuable." *Id.* The trust has no competitors. It is not a business. There was no allegation of any economic value. Tax strategies to lessen taxes cannot be considered economically valuable because the government is not a business entity or competitor. Movants have simply not met their burden to show the information was not generally known *and* economically valuable.

Movants have not proven or even argued that Sonn's disclosure that KPG employed her is confidential under the Agreement. Movants have failed to specifically identify the supposedly confidential information, page and line numbers, and the law supporting their assertion. However, they seek for Sonn to do this in order to delay and disrupt her prosecution of her case. Indeed, they seek for this Court to undertake this effort because the Order must be specific and comprehensible.

## ii) The clause is unenforceable as it is vague, overbroad, and against public policy.

The confidentiality clause is vague and overbroad. In addition, it is unenforceable due to public policy. Sonn fulfills any one of the three separate *Saini* factors. First, the interest in the agreement's enforcement, if that was even possible, is outweighed in the circumstances by a public policy. Enforcement of an incomprehensibly broad confidentiality agreement pales in comparison to employees' rights to expose possible illegal conduct. Here, unlike *Saini*, Sonn spoke to the press about possible tax evasion, not to Plaintiffs' (non-existent) competitors.

Second, Plaintiffs' request to return innumerable and unidentified documents which could result in contempt of court if Sonn makes the wrong guess is an effort to suppress Sonn's access to evidence by diverting her attention to this impossible mission.

1    Notably, there is a protective order in place where Plaintiffs can identify what of Sonn's

2    discovery responses are supposedly confidential. Sonn has turned over a voluminous

3    production, but Movants have not labelled even one document confidential. If they

4    cannot identify this material, how can she? Thus, this appears to be more of a litigation

5    tactic than genuine effort to enforce the clause.

6            Third, Sonn disclosed an act she reasonably believed was illegal to the press.

7    There was no allegation she did so for a purpose other than in the public's interest.

8            The facts here are hotly disputed and thus injunctive relief is not best suited.

9    Disputed facts include what specific information in the NYA was supposedly

10   confidential, whether that information was confidential, the extent of the confidentiality

11   clause, whether it was breached, and so on.

12           Sonn's disclosures were also protected by the litigation and fair report privilege.

13   A party claiming her contractual rights have been breached has an absolute privilege to

14   present that contract and related documents and information to a court. *Lipin v. Hunt*,

15   WL 1344406, at *8 (S.D.N.Y. 2015). Reporting the already-public allegations in a

16   complaint to a member of the media is covered by a separate absolute privilege known

17   as the fair-report privilege. Nevada law "has long recognized a special privilege of

18   absolute immunity from defamation given to the news media and the general public to

19   report newsworthy events in judicial proceedings." *Sahara Gaming Corp. v. Culinary

20   Workers Union Local 226*, 115 Nev. 212, 214 (1999).

21           The privilege not only applies to the news media itself, but also "extends to any

22   person who makes a republication of a judicial proceeding from material that is

23   available to the general public," such as a complaint filed in court. *Id.* Like the litigation

24   privilege, the fair-report privilege is absolute, meaning it "precludes liability even where

25   the defamatory statements are published with knowledge of their falsity and personal ill

26   will toward the plaintiff." *Adelson v. Harris*, 133 Nev. 512, 515 (2017). And, like the

27   litigation privilege, the fair-report privilege immunizes the reporting person from all

28   forms of "civil liability." *Adelson*, 133 Nev. at 519. The article provided a fair and

1    accurate description of the complaint allegations.

2        **e) Sonn will be more harmed than Movants.**

3        Sonn will experience greater hardship than Movants if there is a preliminary

4    injunction. The 2015 Employment Agreement is overbroad and vague. Under it, she

5    would be forced to decide unilaterally what is or is not confidential, at the risk of

6    violating a court order. The proposal would also improperly and illegally prohibit Sonn

7    from further exercising her absolute litigation and fair-report privileges. The order

8    would leave the Movants free to say whatever they wish to the public about Sonn or the

9    lawsuit. Such a one-sided gag order would be thoroughly inequitable.

10       On the Movants' side, they have not shown irreparable harm if the injunction is

11   denied. They will only need to use the normal and traditional means of civil discovery to

12   investigate their theories, as before. The Movants admitted they can and will seek the

13   traditional monetary remedies for breach of contract, if they can allege and prove that

14   any occurred, and therefore have an adequate remedy at law.

15       **f) Public interest favors denial of the injunction.**

16       The litigation and fair report privilege are in the public interest. Whistleblower

17   reports to the press are in the public interest and outweigh overbroad and unenforceable

18   confidentiality clauses. Movants have not alleged any solely pecuniary interest by Sonn.

19   **3) The first through fourth requests seek a mandatory preliminary
20       injunction that is incomprehensible and burdensome.**

21       The 2015 confidential provision is so overbroad and incomprehensible, it seeks to

22   force Sonn to review all her documentation and decide what is confidential, thus

23   ordering her to take action. It is therefore a mandatory injunction. It does not meet the

24   standards. Movants cannot show that the law clearly favors their vague and

25   incomprehensible confidentiality clause or that Sonn violated it. They presented no

26   harm let alone very serious damage, nor that the equities clearly favor them. They have

27   not shown how the public interest of this chilling clause outweighs Sonn's speech for the

28   public good.

Even if the Court finds the first request is not mandatory, the remaining requests to account for her disclosures of all purportedly "confidential" information within 14 days of the order, compel return it, and compel her not to use such information except for litigation and under the protective order, are undoubtedly a mandatory preliminary injunction. As such, it is highly disfavored and carries a higher standard.

**a) The law and facts do not "clearly favor" KPG or Kendalle.**

At the outset, Kendalle is not even a party to the 2015 Agreement confidentiality provision. She fails as neither the law nor facts favor her at all.

This Court has not ruled on the litigation and fair report privilege, and Sonn is likely to succeed there. The NYA information was not confidential, as it was generally known or inferred and had no economic value. The clause is unenforceable due to its overbreadth and vagueness. It is also unenforceable because it violates public policy. It would offend public policy to chill whistleblowers from speaking to the press (not competitors as in *Saini*) about possible tax evasion, or workers from speaking about their employment. It would also negatively impact freedom of the press. Forcing Sonn to turn over countless documents under a vague standard is a litigation tactic that is unfair to her. Indeed, even Movants have not been able to do so.

Sonn disclosed the information in the interest of public policy. That is obvious throughout the article which reports on tax evasion by the super wealthy, one of the most important issues to the public today.

**b) KPG or Kendalle will not suffer extreme or very serious damage.**

Kendalle is not covered by the 2015 Agreement. Plaintiffs' alleged harm to Kendalle in the form of one message through her public website is speculative and not sufficiently evidenced to be caused by the NYA by both the sole email's plain text and the widespread media coverage of Kendalle and her family, including Kendalle's own media efforts. Nor did Movants cite to law supporting the alleged harm.

KPG could only speculate about negative publicity with no evidence whatsoever. It has no customers by which to lose goodwill, no competitors, no advertising or

recruitment campaigns, and cannot plead loss of income. There was no extreme or serious damage here.

**c) The balance of equities favors Sonn.**

Plaintiffs' mandatory injunction would strip Sonn of her legal rights. The second request forcing her to account all supposed disclosures under oath would leapfrog the discovery processes provided by the Federal Rules of Civil Procedure and this Court's scheduling orders. The injunction order would mandate providing something like a set of under-oath Initial Disclosures, but rather than listing facts supporting *Sonn's* claims, as Rule 26 requires, it would force Sonn to compile a list of facts that Plaintiffs would try to use to support *their* claims. That type of information should instead be sought using the normal discovery tools of document requests, interrogatories, and depositions, with their attendant time frames and procedural protections.

The third request is an order to compel Sonn to turn over to the Movants, in seven days, all "Confidential Information" in her possession and certify under oath that she has done so. However, the enforceable scope of the vaguely worded confidentiality clause in Sonn's Employment Agreement will be vigorously contested in this case. Forcing Sonn to attempt to determine now what the clause does and does not cover, on pain of being held in contempt of an injunction order, would be completely unfair. The parties' dispute on this issue, as with the other merits issues, should be resolved through the usual discovery process instead.

Plaintiffs' fourth request is for a broad gag order that would prevent Sonn from using or referencing any "confidential" information for any purpose other than as necessary for the litigation. Here again Sonn would be forced to decide unilaterally what is or is not confidential – a task even Movants have failed to perform - at the risk of violating a court order. The proposal would also improperly prohibit Sonn from further exercising her absolute litigation or fair-report privilege.

On Plaintiffs' side, there will be no irreparable injury of an extreme or severe nature at all if their proposed mandatory injunction is denied. They will simply use the

normal and traditional means of civil discovery to investigate their theories. They also
have the access to public fora to present their side of the story if they wish and as they
did in the NYA where Bob Leberman and Sarah Getty gave quotes. They will ultimately
be able to seek the traditional monetary remedies for breach of contract, if they can
allege and prove that any occurred. Comparing the equities, then, heavily favors denying
the proposed mandatory injunction.

**d) The public interest favors Sonn.**

The Movants argued that the public interest is served generally by enforcing
confidentiality agreements and fiduciary duties. However, the agreement is vague,
overbroad, and unenforceable. Also, the public interest in obtaining information about
litigation is so great that the courts have established two absolute privileges to ensure
that disseminating that information is not impeded: the absolute litigation privilege and
the absolute fair-report privilege. The public policy interests animating those privileges
outweighs Movants' self-interest.

Public policy also favors conducting litigation according to the orderly and fair
processes embodied in the Federal Rules of Civil Procedure. The severe impairments of
Sonn's discovery rights and remedies that the proposed mandatory injunction would
impose run directly counter to the clear policy that the federal procedures should be
used "to secure the just, speedy, and inexpensive determination of every action and
proceeding." Fed. R. Civ. P. 1. Public policy therefore counsels against granting the
extraordinary relief of a mandatory preliminary injunction under these circumstances.

## CONCLUSION

In conclusion, it would be impossible for this Court to even specify what
information would be enjoined from disclosure. Even Movants have failed to do so.
Kendalle is not covered by the confidentiality clause, and even if she was, her alleged
harm is far too speculative to warrant this extraordinary remedy. KPG has alleged no
harm at all and no intangible harm as described in case law. The confidentiality clause is
unenforceable as per public policy. There are myriad disputed facts. In addition, there

are important public policy concerns here.

An injunction would unfairly impact Sonn which tilts the balance of harms to her. Movants have an adequate legal remedy if they can prove their claims, and are pursuing it. That is the proper procedure here. The injunction should be denied.

Dated: May 8, 2024                    SIEGEL, YEE, BRUNNER & MEHTA

By: ___/s/ Sonya Z. Mehta_____
    Sonya Z. Mehta

Attorneys for Marlena Sonn