Leigh T. Goddard (NV Bar No. 6315)
Daniel I. Aquino (NV Bar No. 12682)
MCDONALD CARANO LLP
100 W. Liberty St. Tenth Floor
Reno, NV  89501
Telephone:  775-788-2000
lgoddard@mcdonaldcarano.com
daquino@mcdonaldcarano.com

*Attorneys for KPG Investments, Inc.
and Kendalle Getty*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| KPG INVESTMENTS INC., a Nevada corporation; KENDALLE GETTY, an individual, | Case No.: 3:22-cv-00236-ART-CLB |
|       Plaintiffs, | |
|    v. | |
| MARLENA SONN, an individual; AND DOES 1-20, | |
|       Defendant. | |
| ———————————————/ | |
| MARLENA SONN, | Consolidated with: 3:22-cv-00323-ART-CLB |
|       Plaintiff, | |
|    v. | |
| KENDALLE P. GETTY, as Trustee of the Pleiades Trust and as an individual, KPG INVESTMENTS, INC., as Trustee of the Pleiades Trust, ALEXANDRA SARAH GETTY, as Trustee of the Pleiades Trust and as an individual, ASG INVESTMENTS, INC., as Trustee of the Pleiades Trust, MINERVA OFFICE MANAGEMENT, INC., and ROBERT L. LEBERMAN, | **DEFENDANTS KENDALLE GETTY AND KPG INVESTMENTS, INC.'S OPPOSITION TO MARLENA SONN'S MOTION TO DISMISS FIRST AMENDED COMPLAINT** |
|       Defendants. | |
| ———————————————/ | |

1

Kendalle Getty ("Kendalle") and KPG Investments, Inc. ("KPG") hereby oppose Plaintiff Marlena Sonn's ("Sonn") Motion to Dismiss First Amended Complaint. This Opposition is made and based upon the following brief, all of the pleadings and papers on file herein, and such oral argument as the Court may entertain.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      INTRODUCTION**

As alleged in Kendalle and KPG's Amended Complaint, Sonn committed egregious breaches of her fiduciary duties. Sonn fraudulently schemed to modify her compensation, guarantee herself a $2.5 million bonus, and remove critical legal and financial safeguards protecting Kendalle and KPG's interests. Sonn's Motion is premised on ignoring the facts actually alleged in Kendalle and KPG's Amended Complaint. As set forth below, Sonn's Motion[1] presents no valid basis on which to dismiss Kendalle and KPG's Amended Complaint.

**II.     FACTUAL AND PROCEDURAL BACKGROUND**

**A.     Sonn's Employment with Kendalle and KPG.**

On November 1, 2015, Sonn and KPG entered into an at-will employment agreement ("Employment Agreement") whereby Sonn agreed to serve as the Vice President and corporate officer of KPG. (ECF No. 105, ¶ 14.) Sonn also served as a personal financial advisor to Kendalle. (*Id.*, ¶ 19.) Kendalle and Sonn became close friends over their years of working together, and Kendalle came to unconditionally trust and depend upon Sonn's recommendations. (*Id.*, ¶¶ 54-55.)

**B.     The First Incentive Award Letter.**

In mid-to-late 2017, Sonn requested that Kendalle increase Sonn's compensation as Vice President of KPG. (*Id.*, ¶ 21.) In response, Kendalle's legal

---

[1] As a threshold matter, Sonn's Motion to Dismiss should be stricken for failure to comply with Local Rule 7-3(b)'s 24-page limit. Sonn's Motion to Dismiss totals 32 pages. (*See* Motion, ECF No. 163.)

McDONALD CARANO
100 WEST LIBERTY STREET, TENTH FLOOR • RENO, NEVADA 89501
PHONE 775.788.2000 • FAX 775.788.2020

counsel prepared an Incentive Award Letter outlining two bonus payments to Sonn. (*Id.*, ¶ 22.)   This First Incentive Award Letter ("FIAL") provided that Sonn would receive the first one-time cash bonus on the date that Kendalle, as a remainder beneficiary, received *any* distribution of funds in excess of $25 million from the Pleiades Trust, equal to 0.00375% of the after-tax distribution received by Kendalle. (*Id.*, ¶ 23.)   The FIAL also awarded Sonn a second one-time cash bonus on the date of the final distribution of funds to Kendalle from the Pleiades Trust, equal to 0.00375% of all after-tax distributions received after the first bonus payment.  (*Id.*)

The FIAL contained critical safeguards, drafted by Kendalle's counsel, to protect KPG and Kendalle's interests.  (*Id.*, ¶ 26.)  Specifically, the FIAL provided that Sonn would not be entitled to receive *any* bonus payment in the event that she was terminated by KPG prior to the time of any applicable payment.  (*Id.*, ¶ 27.) This employment requirement was vital to incentivize Sonn to act in the best interests of Kendalle and KPG.  (*Id.*)  The FIAL also conditioned payment of any bonus to Sonn on Kendalle's actual receipt of distributions from the Pleiades Trust. (*Id.*, ¶ 28.)  This requirement was necessary to ensure that KPG did not become liable to Sonn for sums that had not yet been distributed for Kendalle's benefit.  (*Id.*)

The FIAL was executed on November 10, 2017.  (*Id.*, ¶ 25.)

**C.    Sonn Breaches Her Fiduciary Duties to Kendalle and KPG.**

In or around January 2021, Sonn's employment with ASG Investments, Inc., another trustee of the Pleiades Trust, was terminated.  (*Id.*, ¶ 29.)   Shortly thereafter, Sonn became concerned about the stability of her employment with Kendalle and KPG.  (*Id.*, ¶ 30.)  Specifically, Sonn realized that, pursuant to the terms of the FIAL, Sonn would not be entitled to any bonus payments if Kendalle terminated her employment with KPG before the applicable payment dates.  (*Id.*) Accordingly, Sonn devised a plan to coerce Kendalle to execute a new Incentive Award Letter to serve Sonn's interests over Kendalle and KPG.  (*Id.*)

McDONALD CARANO
100 WEST LIBERTY STREET, TENTH FLOOR • RENO, NEVADA 89501
PHONE 775.788.2000 • FAX 775.788.2020

McDONALD CARANO

100 WEST LIBERTY STREET, TENTH FLOOR • RENO, NEVADA 89501
PHONE 775.788.2000 • FAX 775.788.2020

On or about March 14, 2021, Sonn presented Kendalle with an updated Incentive Award Letter, which Sonn had unilaterally drafted.  (*Id.*, ¶¶ 31-33.)  This Second Incentive Award Letter ("SIAL") was a major financial transaction, reflecting a promise to pay $2.5 million of Kendalle and KPG's funds to Sonn.  (*Id.*, ¶ 36.)  Nonetheless, Sonn never provided a copy of the SIAL to Kendalle's legal counsel to review, despite being aware that Kendalle's attorney drafted the FIAL and counseled Kendalle in connection with its execution.  (*Id.*, ¶¶ 42-45.) Sonn never suggested that Kendalle independently contact counsel to review the SIAL.  (*Id.*)

To the contrary, Sonn misrepresented to Kendalle that the SIAL was a "standard" document that served only to corroborate and substantiate the terms of the FIAL, and that it was therefore not necessary for Kendalle to consult her lawyer. (*Id.*)  Sonn falsely represented to Kendalle that the terms of the SIAL were fair, justified, and in the best interests of Kendalle and KPG.  (*Id.*, ¶ 34.)

Sonn did not inform Kendalle that she had made numerous modifications to the key terms of the FIAL and had removed critical safeguards and protections intended to protect Kendalle against unscrupulous conduct.   For example, while the FIAL calculated Sonn's bonus as a percentage of the distributions Kendalle received from the Pleiades Trust, after taxes, the SIAL calculated Sonn's bonus as a percentage of the *entire Pleiades Trust*, before taxes, thereby greatly increasing Sonn's overall bonus.  (*Id.*, ¶ 36.)

The SIAL also removed the safeguard conditioning payment of any bonus on Kendalle's actual receipt of funds from the Pleiades Trust.  (*Id.*, ¶ 40.)  Specifically, the SIAL required payments to be made to Sonn in three installments on March 31, 2021 (only two weeks after Sonn presented the SIAL to Kendalle), March 31, 2022, and March 31, 2023, or, alternatively, within 30 days of Sonn's termination of employment.  (*Id.*)  Accordingly, the SIAL exposed KPG to potential liability for sums Kendalle had not yet received from the Pleiades Trust.   (*Id.*)   This

modification was particularly egregious because Sonn was aware that the amounts Kendalle received from the Pleiades Trust during her father's lifetime are far smaller than the substantial amounts to which she is entitled following her father's death.

Finally, the SIAL removed the safeguard requiring that Sonn remain employed at KPG in order to qualify for the bonus payment.  (*Id*., ¶ 38.)  As a result, the SIAL guaranteed Sonn a payment of $2.5 million, even if she were terminated, for any reason (including poor performance, theft or fraud), prior to the applicable payment dates.  The SIAL also required payment of the entire $2.5 million within 30 days of termination, for any reason.  (*Id*.)  Accordingly, the SIAL not only allowed Sonn to perform poorly with no adverse consequences, it incentivized Sonn to act against the best interests of KPG and Kendalle and be terminated, which would accelerate her receipt of the $2.5 million payment.  (*Id*.)

Based on the above, no reasonable fiduciary would have recommended that Kendalle execute the SIAL.  Nevertheless, contrary to her fiduciary obligations and acting in pure self-interest, Sonn actively discouraged Kendalle from consulting anyone about the SIAL and pressured her to sign it quickly.  (*Id*., ¶¶ 45, 52.)  Sonn knew that Kendalle was in an extremely vulnerable emotional state due to personal issues, including the anniversary of the death of a close family member.  (*Id*., ¶ 53.)  Sonn took advantage of these circumstances and leveraged her position as a trusted fiduciary and friend to extract an exorbitant financial advantage.  (*Id*., ¶ 56.)

As a result of Kendalle's heightened emotional state and her complete trust in Sonn as a fiduciary and friend, Kendalle was unable to understand the ways in which the SIAL harmed her and KPG's interests.  Kendalle executed the SIAL on March 17, 2021, just three days after Sonn presented the document.  (*Id*., ¶ 57.)

Having successfully coerced Kendalle into signing the SIAL, Sonn immediately took steps to secure payment of funds.  (*Id*., ¶ 59.)  On March 25, 2021, Sonn emailed KPG's Secretary and Treasurer Francis Nash, who is now

McDONALD CARANO

100 WEST LIBERTY STREET, TENTH FLOOR • RENO, NEVADA 89501
PHONE 775.788.2000 • FAX 775.788.2020

deceased, to demand payment of her first bonus award.  When Mr. Nash replied that he was extremely ill, Sonn (rather than responding to Mr. Nash with empathy) requested that Mr. Nash ignore his other responsibilities and his own health, and instead "save [his] energy to take care of making the manual payment [of Sonn's bonus] on ADP's website."  (*Id*.)  Put simply, Sonn pressured KPG's treasurer, who was dying from a medical condition, to use his remaining energy to quickly process her payment.  (*Id*.)   Sonn's communication with Mr. Nash further highlights Sonn's greed and manipulation in connection with the SIAL.

Sonn's scheme was initially successful, as KPG made the first bonus payment of $833,333 to Sonn on or about March 31, 2021.  (*Id*., ¶ 60.)  Following the execution of the SIAL, Kendalle became concerned about its terms.  (*Id*., ¶ 63.) After speaking with several individuals, including her legal counsel, Kendalle realized that the terms of the SIAL were highly unusual and contrary to her best interests, and that Sonn had taken advantage of their relationship to extract a financial benefit.   (*Id*., ¶¶ 63-64.)  As a result of this breach of trust and fiduciary duty, KPG terminated Sonn's employment on November 30, 2021.  (*Id*., ¶ 65.)

**D.   Sonn Breaches Her Contractual Confidentiality Obligations.**

The Employment Agreement contains the following confidentiality provision:

> [Sonn] acknowledges [KPG]'s right and title to all proprietary materials which constitutes all materials used in [KPG]'s business, including financial information and reports relating to any trust for which [KPG] may serve as trustee and agrees not to disclose any such material to any third party except in the course of the duties of [Sonn] on behalf of [KPG] or as may be required by court order or lawful subpoena, after reasonable notice to [KPG].

(*Id*., ¶ 16.)

On March 17, 2022, Kendalle and KPG initiated an action in Washoe County District Court against Sonn (Case No. CV22-0444), asserting various claims related to breaches of Sonn's fiduciary duties.  (*Id*., ¶ 66.)  To preserve the confidentiality of

McDONALD CARANO

100 WEST LIBERTY STREET, TENTH FLOOR • RENO, NEVADA 89501
PHONE 775.788.2000 • FAX 775.788.2020

the matter Kendalle and KPG filed the matter with a motion to seal the complaint. (*Id.*)  On May 11, 2022, two months after Kendalle and KPG initiated their action, Sonn filed suit against Kendalle and KPG in the U.S. District Court Eastern District of New York, entitled *Sonn v. Getty et. al.*, bearing Case No. 1:22-cv-02758-RPK-VMS.  Despite her contractual confidentiality obligations, Sonn filed her New York complaint in the public docket without attempt to redact or seal.  (*Id.*, ¶ 67.)

On January 16, 2023, The New Yorker published an article entitled "The Getty Family Trust Issue."  (*Id.*, ¶ 71.)  Sonn provided confidential information regarding Kendalle and KPG's finances, including KPG's investment strategies, financial transactions and deliberations, taxes, and payout expectations.  (*Id.*, ¶ 72.) The article states that its author, journalist Evan Osnos, had at least one telephone conversation and one in-person meeting with Sonn in which she disclosed confidential information.  (*Id.*, ¶ 74.)  Immediately after Sonn caused the New Yorker Article to be published, Kendalle received anonymous offensive and threatening messages.  (*Id.*, ¶ 75.)

## II.     ARGUMENT

### A.     Legal Standard.

In ruling on a Fed. R. Civ. P. 12(b)(6) motion, a court must assume all factual allegations in complaint are true and construe them in the light most favorable to the nonmoving party.  *Urbina v. Homeview Lending Inc.*, 681 F. Supp. 2d 1254, 1257 (D. Nev. 2009) (citing *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996)).  A court may only dismiss a claim if it lacks a cognizable legal theory or if there are insufficient facts alleged under a cognizable legal theory.  *Johnson v. Riverside Healthcare Sys.*, LP, 534 F.3d 1116, 1122 (9th Cir. 2008).  Though the burden is not onerous, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible

McDONALD CARANO

100 WEST LIBERTY STREET, TENTH FLOOR • RENO, NEVADA 89501
PHONE 775.788.2000 • FAX 775.788.2020

1   on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (quoting *Bell Atlantic Corp. v.*

2   *Twombly,* 550 U.S. 544, 570 (2007)).

3         **B.   KPG and Kendalle Sufficiently Allege Sonn's Breaches of**
                 **Contract, Which Were Not Privileged**

4

5         The Amended Complaint clearly alleges that Sonn's filing of her Complaint

6   and disclosure of confidential information to reporters constitutes a breach of her

7   contractual confidentiality obligations.  Sonn first suggests she was free to disclose

8   confidential facts she received during the course of her employment by

9   characterizing such breaches of confidentiality as a "disclosure of Kendalle's

10   information," rather than KPG's information.  (ECF No. 163, p. 7 at 28.)[2]

11         Sonn's reliance on the fact that she entered into an employment agreement

12   with KPG only, not Kendalle, is misplaced.  (ECF No. 163, p. 13 at 25 – p. 14 at 2.)

13   Kendalle was clearly a third-party beneficiary under the Employment Agreement,

14   particularly with respect to the confidentiality provision. *See Olson v. Iacometti*, 91

15   Nev. 241, 245–46, 533 P.2d 1360, 1364 (1975) (nonsignatory to contract may

16   maintain an action for breach of contract where it is demonstrated that the contract

17   "was intended for his direct benefit").   KPG is a business entity formed solely to

18   serve as trustee of Kendalle's beneficial interest in the Pleiades Trust.  (*See* ECF

19   No. 105, ¶ 12-13.) The confidentiality obligations in Sonn's Employment Agreement

20   with KPG were clearly intended to benefit Kendalle individually, as confidential

21   information Sonn received by virtue of her employment with KPG would necessarily

22   concern Kendalle's personal and financial affairs.  As alleged in the Amended

23   Complaint, Sonn's disclosure of "confidential information about Kendalle and KPG's

24   finances" were one and the same.  (ECF No. 105, ¶ 72.)  Thus, both KPG and

25

---

26   [2] The numerical pagination of Sonn's Motion to Dismiss begins at the bottom of its seventh
    page.  To avoid confusion, this Opposition refers to docket's page numbers at the top of

27       each page, which begin on the first page of Sonn's Motion to Dismiss.

McDONALD CARANO
100 WEST LIBERTY STREET, TENTH FLOOR • RENO, NEVADA 89501
PHONE 775.788.2000 • FAX 775.788.2020

1   Kendalle suffered individual harm.  Sonn provides no basis on which to dismiss the

2   claims for breach of contract and contractual breach of the implied covenant of

3   good faith and fair dealing.

4        Sonn does not dispute that her disclosure of information, as alleged in the

5   Amended Complaint, violates the terms of her Employment Agreement.  Rather,

6   she asserts that she was privileged to breach her contractual confidentiality

7   obligations.  However, Sonn identifies no privilege that protects against contractual

8   liability for breaching confidentiality obligations.

9        **1.    Sonn Was Not Privileged to Breach Her Contractual**

10       **Confidentiality Obligations Via Court Filings**

11       Sonn does not dispute that she disclosed information protected under the

12  plain language of her Employment Agreement.  Instead, Sonn argues that the

13  litigation privilege allowed her to breach her confidentiality obligations by filing

14  protected information on the public docket.  According to Sonn, with the

15  confidentiality of such publicly filed information destroyed, she is then insulated

16  from liability for further disclosures of the protected information.

17       However, the Nevada cases on which Sonn relies demonstrate that

18  Nevada's litigation privilege is primarily aimed at defamation, libel, slander, and

19  similar tort claims, *not* shielding parties from contractual liability for disclosure of

20  confidential information.  (*See* ECF No. 163, p. 14  at 10-20); *Searcy v. Esurance*

21  *Ins. Co.*, 243 F. Supp. 3d 1146, 1155 (D. Nev. 2017) (applying litigation privilege in

22  context of insurance tort); *Greenberg Traurig v. Frias Holding Co.*, 130 Nev. 627,

23  631, 331 P.3d 901, 903 (2014) (applying litigation privilege in context of legal

24  malpractice action); *Smith v. Craig*, No. 2:19-CV-00824-GMN-EJY, 2020 WL

25  1065715 (D. Nev. Mar. 4, 2020) (applying litigation privilege in context of slander,

26  defamation and conspiracy tort claims).

27

"The policy underlying the [litigation] privilege is that in certain situations the public interest in having people speak freely outweighs the risk that individuals will occasionally abuse the privilege by making **false and malicious statements**." *Circus Circus Hotels, Inc. v. Witherspoon*, 99 Nev. 56, 61, 657 P.2d 101, 104 (1983) (emphasis added); *see also Fink v. Oshins*, 118 Nev. 428, 434, 49 P.3d 640, 644 (2002) (addressing litigation privilege in context of defamation claim); *Williams v. Lazer*, 137 Nev. 437, 444, 495 P.3d 93, 100 (2021) ("The absolute litigation privilege is rooted in a rich body of common law as a defense to defamation and other tort claims"); *Shapiro v. Welt*, 133 Nev. 35, 41, 389 P.3d 262, 269 (2017) (applying litigation privilege in context of libel and slander claims).

Sonn does not cite any case standing for the proposition that the litigation privilege permits an individual to breach a *contractual* confidentiality provision without consequence, merely because the confidential information is set forth in a public pleading.  While there does not appear to be any Nevada legal authority directly addressing the issue, numerous courts have recognized that even broad litigation privileges do not insulate a party from liability for breaching contractual confidentiality obligations.[3]

---

[3] *See, e.g., USA Wheel & Tire Outlet # 2, Inc. v. United Parcel Serv. Inc.,* No. SACV 13–0403–DOC MLG, 2014 WL 197733, at *3-4 (C.D. Cal. Jan.14, 2014) (litigation privilege did not bar claim based on unredacted filing of the rates, terms, and incentives protected by contractual confidentiality provision); *Wentland v. Wass,* 126 Cal.App.4th 1484, 1488, 25 Cal.Rptr.3d 109 (2005) (litigation privilege did not bar a cross-complaint alleging that the plaintiff breached a confidentiality agreement by filing court documents); *ITT Telecom Prods. Corp. v. Dooley,* 214 Cal.App.3d 307, 317–20, 262 Cal.Rptr. 773 (1989) (litigation privilege does not extend to statements made in breach of an express agreement not to disclose trade secrets); *Rapaport v. Strategic Fin. Sols., LLC,* 190 A.D.3d 657, 140 N.Y.S.3d 508, 510 (2021) ("plaintiff's reliance on the 'litigation privilege' is misplaced, since, that privilege exists in the context of defamation claims, and he cites no authority for his apparent assertion that it immunizes breaches of contractual confidentiality provisions as well"); *Full Circle United, LLC v. Skee-Ball, Inc.,* No. 11-CV-5476, 2014 WL 12829195, at *7 (E.D.N.Y. May 13, 2014) (holding that litigation privilege did not apply to preclude a claim for breach of contract); *Borden v. Malone*, 327 So. 3d 1105, 1120 (Ala. 2020) (litigation privilege did not insulate party from claims relating to alleged breach of confidentiality).

McDONALD CARANO

100 WEST LIBERTY STREET, TENTH FLOOR • RENO, NEVADA 89501
PHONE 775.788.2000 • FAX 775.788.2020

The Nevada Supreme Court would likely agree with the authority from California, New York, and other jurisdictions. Contrary to Sonn's characterizations, the Nevada Supreme Court has recognized that the "absolute" litigation privilege does, in fact, have limitations. *See Greenberg Traurig*, 130 Nev. at 630–31, 331 P.3d at 903 ("Although this court has stated that the privilege is absolute, in that it applies even if the communications were made with knowledge and malice, . . . we have recognized that the privilege has limitations.") In *Greenberg*, the Court found that communicative acts that form the basis of legal-malpractice and professional negligence actions are not protected by the litigation privilege. *Id.*; *see also Bull v. McCuskey*, 96 Nev. 706, 712, 615 P.2d 957, 961 (1980) *abrogated on other grounds by Ace Truck & Equip. Rentals, Inc. v. Kahn*, 103 Nev. 503, 746 P.2d 132 (1987) (stating that litigation privilege does not shield an attorney from bar discipline stemming from the attorney's misconduct).

The Nevada Supreme Court has never authorized Sonn's proposed circumvention of contractual confidentiality obligations. If Sonn's interpretation of the "absolute" litigation privilege were valid, filing documents under seal would be pointless, as the opposing party would be free to file the sealed information publicly, and claim litigation privilege protection. (Sonn took this exact action after Kendalle and KPG filed their original Complaint under seal in state court.) Parties could use public pleadings to disclose the content of confidential settlement agreements, trade secrets, protected medical information, or other contractually protected information. It is clear the Nevada Supreme Court would not eviscerate contractual confidentiality obligations in this manner.

Sonn's further arguments are not compelling. While Sonn suggests that Nevada would apply the litigation privilege when the gravamen of the claim sounded in tort, this argument is both irrelevant and unsupported. Put simply, Kendalle and KPG raised a claim for breach of contract because Sonn disclosed

McDONALD CARANO

100 WEST LIBERTY STREET, TENTH FLOOR • RENO, NEVADA 89501
PHONE 775.788.2000 • FAX 775.788.2020

information rendered confidential by a contract.  By contrast, a "defamation claim requires demonstrating (1) a false and defamatory statement of fact by the defendant concerning the plaintiff; (2) an unprivileged publication to a third person; (3) fault, amounting to at least negligence; and (4) actual or presumed damages." *Pope v. Motel 6*, 121 Nev. 307, 315, 114 P.3d 277, 282 (2005).  Kendalle and KPG have not based their claim on the falsehood of Sonn's statements (even though many of her statements are false), but rather on Sonn's contractual promise not to disclose information, which she breached.  Further, KPG is a trustee managing expansive financial information and family business concerns, and the Amended Complaint has alleged KPG thus suffered individual harm.  KPG has a duty to protect the interests of the trust beneficiary, and Sonn interfered with this duty by disclosing confidential information about KPG and the related trust entities, including the Pleiades trust.  Sonn's argument ignores the basic nature of the claims as alleged in the Amended Complaint.

Indeed, Sonn's own cited case, *Wentland v. Wass*, 126 Cal. App. 4th 1484, 1495, 25 Cal. Rptr. 3d 109, 117 (2005), recognized that where the operative complaint was based on breach of contract due to disclosure, not falsehood, the claim sounded in contract, not tort.  *Id*.  (noting breach was alleged "not because such comments were false (although it alleged they were), but because they had promised not to continue to make such comments. The cross-complaint sounds in contract, not tort.")  Protecting against the disclosure of information itself (whether true or false) and the ensuing publicity is the very reason that Kendalle, KPG, and others in the Getty family rely on contractual confidentiality provisions.  The gravamen of Kendalle and KPG's claim for breach of contract is fundamentally removed from the tort of defamation.

The further cases Sonn cites are clearly inapplicable.  (ECF No. 163, p. 15 at 2-7.)  In *Crockett & Meyers, Ltd. v. Napier, Fitzgerald & Kirby, LLP*, 583 F.3d 1232,

12

1236 (9th Cir. 2009), the defendant client had been represented by two attorneys, the first of whom sued the client for comments made to the second attorney about firing the first attorney.  Most importantly, there was no confidentiality obligation, contractual or otherwise, at issue.  In *Smith v. Craig*, 2020 WL 1065715, at *11 (D. Nev. Mar. 4, 2020), the court explicitly declined to analyze issues in the context of a breach of contract claim.  ("But Plaintiff does not present a breach of contract claim; and thus, the success of such a claim need not be analyzed.")

Put simply, Sonn's sole argument justifying her breach of confidentiality via pleadings is wholly unsupported by Nevada law.  As Sonn plainly breached the Employment Agreement's confidentiality provision when she filed her Complaint, her request to dismiss this claim must be denied.

### 2. Sonn Breached Her Contractual Confidentiality Obligations By Disclosing Protected Information to a Reporter

Based on Sonn's absurdly expansive interpretation of the "absolute" litigation privilege, Sonn next claims that her disclosure to the New Yorker must also be valid.  However, as set forth above, the litigation privilege did not permit Sonn to breach her *contractual* confidentiality obligations.  Sonn's reliance on the "fair-report privilege" fails for similar reasons.  As Sonn's cited cases demonstrate, Nevada has applied the "fair-report privilege" to *defamation* claims.  *See Sahara Gaming Corp. v. Culinary Workers Union Local 226*, 115 Nev. 212, 214, 984 P.2d 164, 166 (1999) (describing fair-report privilege as "absolute immunity **from defamation**") (emphasis added); *Adelson v. Harris*, 133 Nev. 512, 515, 402 P.3d 665, 667–68 (2017) (fair-report privilege "precludes liability even where the **defamatory statements** are published with knowledge of their falsity and personal ill will toward the plaintiff") (emphasis added).  Sonn cites no authority permitting an individual to disclose contractually protected confidential information to the press.

McDONALD CARANO

100 WEST LIBERTY STREET, TENTH FLOOR • RENO, NEVADA 89501
PHONE 775.788.2000 • FAX 775.788.2020

While the Nevada Supreme Court has not addressed this issue directly, Nevada and California courts have excluded this type of conduct from press-related privileges.  In *Rothman v. Jackson*, 49 Cal.App.4th 1134, 57 Cal.Rptr.2d 284, 294 (1996), the court held that the litigation privilege did not extend to "litigating in the press." In *Rothman*, statements made to the press on behalf of a celebrity were not privileged where the communications sought to vindicate him from criminal charges "in the forum of public opinion" by denying guilt and making countercharges that those bringing the charges were guilty of criminal conduct.  *Id.*

Likewise, the District of Nevada has recognized that "'litigating in the press' that bears no 'functional' connection to the litigation is not immune, even under California's expansive litigation privilege."  *Adobe Sys. Inc. v. Christenson*, 891 F. Supp. 2d 1194, 1209–10 (D. Nev. 2012), *aff'd*, 809 F.3d 1071 (9th Cir. 2015). Rather, the applicable case law supports that only "press releases '*merely* informing a third party of the *pendency* of [the] litigation' are privileged."  *Id*. (emphasis in original) (citing *eCash Techs., Inc. v. Guagliardo,* 127 F.Supp.2d 1069, 1082 (C.D. Cal. 2000); *see also Microsoft Corp. v. Yokohama Telecom Corp.,* 993 F. Supp. 782, 784 (C.D. Cal. 1998) (privilege applies to a press release that "captures the substance of, and does not deviate from, the allegations in [the] Complaint").

Sonn did not merely disclose the existence of the lawsuit to The New Yorker. Sonn is quoted as the source for facts related to her employment with KPG, communications between her and Kendalle, the specific amounts of money Sonn managed, tax strategies, and other sensitive financial information for both KPG and the Pleiades trust.  (*See* ECF No. 48*,* Exhibit 3) (describing Sonn's disclosure of information related to the "complex . . . inner workings of the [Getty] family"; "reshuffling of more than $200 million" to redistribute trust fund shares following the death of Kendalle's sibling; strategy and corporate structure of entity created to manage Kendalle's interest in Pleiades trust; KPG's methodology for considering

investment decisions; exact amount of Kendalle's "nest egg"; and detailed information regarding tax strategies for both KPG and the Pleiades trust).  The New Yorker article also accused Kendalle, KPG, and other members of the Getty family (including individual trust entities) of improperly evading taxes.  (*Id*.)

Put simply, Sonn went beyond merely informing The New Yorker about her publicly filed complaint, which was already filed in violation of her confidentiality obligations.  Sonn intentionally disclosed confidential facts regarding financial information and other aspects of her employment, seeking to "litigate in the press" by vindicating herself of liability and casting Kendalle, KPG, and other defendants as wrongdoers.  The Amended Complaint sufficiently alleges Sonn breached the Employment Agreement's confidentiality provision.

**C.    Kendalle and KPG State a Valid Claim for Breach of Fiduciary Duty.**

      **1.    The Business Judgment Rule Does Not Protect Sonn's Fraudulent Self-Dealing in Violation Of Her Fiduciary Duties to KPG**

The entirety of Sonn's analysis of the business judgment rule is irrelevant. Sonn ignores the fact that the business judgment rule does not apply where the defendant's actions were "the product of fraud or self-interest."  *Wynn Resorts, Ltd. v. Eighth Jud. Dist. Ct. in & for Cnty. of Clark*, 133 Nev. 369, 377, 399 P.3d 334, 343 (2017) (citing Joseph F. Troy & William D. Gould, Advising & Defending Corporate Directors and Officers § 3.15 (Cal CEB rev. ed. 2007)); *see also Guzman v. Johnson*, 137 Nev. 126, 132, 483 P.3d 531, 537 (2021) (recognizing that "a plaintiff may rebut the business judgment rule's presumption of good faith by, for instance, showing that the fiduciary had a personal interest in the transaction").

Here, the SIAL was drafted to provide Sonn more money, against Kendalle and KPG's best interests.  Sonn's personal self-interest was the sole driving force in

her drafting of the SIAL and fraudulent recommendation that Kendalle execute the document.   Sonn's personal self-interest prevents application of the business judgment rule.

### 2.   Sonn Owed a Fiduciary Duty to Kendalle as a Financial Advisor Under Nevada Law

Sonn's assertion that she did not owe Kendalle a fiduciary duty as a financial advisor is contrary to law.   Under Nevada law, a "confidential relationship 'exists when one reposes a special confidence in another so that the latter, in equity and good conscience, is bound to act in good faith and with due regard to the interests of the one reposing the confidence.'"   *Hernandez v. Creative Concepts, Inc.*, 862 F. Supp. 2d 1073, 1091 (D. Nev. 2012) (citing *Perry v. Jordan*, 111 Nev. 943, 900 P.2d 335, 337 (1995)).   A financial advisor owes a fiduciary duty to their client.   *See Primiani v. Fed. Ins. Co.*, 203 F. App'x 902, 904 (9th Cir. 2006) ("trusted financial advisers . . . owed a fiduciary duty towards the clients").   "Whether a confidential relationship exists generally is a question of fact," to be addressed, at the soonest, "at summary judgment" to assess sufficiency.   *Hernandez,* 862 F. Supp. 2d at 1091.

To prevail on a breach of fiduciary duty claim, the plaintiff need only establish: "(1) the existence of a fiduciary duty; (2) breach of that duty; and (3) the breach proximately caused the damages." *Klein v. Freedom Strategic Partners, LLC*, 595 F.Supp.2d 1152, 1162 (D. Nev. 2009).   The Amended Complaint plainly alleges that Sonn—in violation of her fiduciary duties to Kendalle—not only advised Kendalle to sign the SIAL, but demanded she do so.   (*See* ECF No. 105, ¶ 51.) Sonn never suggested that Kendalle independently contact counsel or provided a copy of the SIAL to Kendalle's legal counsel to review, despite the fact that Sonn was aware Kendalle's attorney had drafted the FIAL and counseled Kendalle in connection with its execution.   (*See* ECF No. 105, ¶¶ 42-45.)   Sonn misrepresented to Kendalle that the SIAL was a "standard" document that served only to

McDONALD CARANO

100 WEST LIBERTY STREET, TENTH FLOOR • RENO, NEVADA 89501
PHONE 775.788.2000 • FAX 775.788.2020

corroborate and substantiate the terms of the FIAL, and that it was therefore not necessary for Kendalle to consult her lawyer.  (*Id.*)  Sonn falsely represented to Kendalle that the terms of the SIAL were fair, justified, and in the best interests of Kendalle and KPG.  (*Id.*, ¶ 34.)  When Kendalle expressed concern about the bonus provided in the SIAL, which Sonn falsely told her was $2 million rather than $2.5 million, Sonn dismissed her concerns and continued to pressure her to sign the SIAL.  (*Id.*, ¶¶ 49-51.)

Contrary to Sonn's assertions, Kendalle has asserted numerous specific facts demonstrating Sonn's fiduciary duty and breaches by failing to act in Kendalle's best interest.  Kendalle has thus fully supported her breach of fiduciary duty claim.

### D. Kendalle and KPG State a Valid Claim for Intentional Misrepresentation.

To state a claim for fraud, a plaintiff must allege: (1) a false representation, (2) knowledge or belief that the representation was false, (3) intent to induce the plaintiff to act, (4) justifiable reliance on the misrepresentation, and (5) the plaintiff suffered damages as a result.  *J.A. Jones Constr. Co. v. Lehrer McGovern Bovis, Inc.*, 120 Nev. 277, 89 P.3d 1009, 1018 (2004).  A plaintiff must allege the "who, what, when, where, and how" of the fraudulent actions, which requires "more than the neutral facts necessary to identify the transaction," including "what is false or misleading about a statement, and why it is false."  *Vess v. Ciba-Geigy Corp*. USA, 317 F.3d 1097 (9th Cir. 2003).  The overarching purpose of these requirements are to effectuate Rule 9(b)'s demand that, "when averments of fraud are made, the circumstances constituting the alleged fraud 'be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong.'"  *Vess*, 317 F.3d at 1106

(citing *Bly–Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001).  As set forth below, KPG and Kendalle have adequately alleged a claim for fraud.

Kendall and KPG allege in their Amended Complaint that, on March 14, 2021, Sonn falsely represented to Kendalle that the terms of the SIAL were fair, justified, and in the best interests of Kendalle and KPG, which was false.  (ECF No. 105, ¶¶ 34-41, 46-49.)  Specifically, the SIAL was contrary to the best interests of Kendalle and KPG because it removed critical safeguards designed to protect Kendalle and KPG, including the requirement that Sonn remain employed by KPG at the time of any applicable payment and the provision conditioning payment of any bonuses on Kendalle's actual receipt of funds from the Pleiades Trust.

Further, the SIAL contained an acceleration clause stating that, if [Sonn's] employment was terminated, regardless of the reason for termination, payment of the entire $2.5 million would be due within 30 days of termination." (*Id.*, ¶ 39.) Contrary to the FIAL, this "incentivized [Sonn] to perform poorly or against the best interests of [KPG and Kendalle] so that [Sonn's] employment would be terminated, thus accelerating her (now guaranteed) payment." (*Id.*) "This modification benefitted [Sonn's] personal interests, to the detriment of [KPG and Kendalle]." (*Id.*)

In sum, Kendalle and KPG have alleged in detail that Sonn misrepresented that the SIAL was fair, justified, and in the best interests of Kendalle and KPG.

While Kendalle and KPG have alleged Sonn's specific affirmative misrepresentations, they also allege facts supporting a "fraud-by-omission" theory. Specifically, "[b]etween March 14, 2021 and March 17, 2021, [Sonn] omitted facts related to the true nature of the SIAL, including the fact that the terms were not in the best interest of [Kendalle and KPG]." (*Id.*, ¶ 107.)  This, likewise, is sufficient to state a claim for fraudulent misrepresentation.  See *Painters & Allied Trades Dist. Council 82 Health Care Fund v. Takeda Pharm. Co. Ltd.*, 520 F. Supp. 3d 1258, 1267 (C.D. Cal. 2021) ("a plaintiff in a fraud-by-omission suit faces a slightly more

relaxed burden, due to the fraud-by-omission plaintiff's inherent inability to specify the time, place, and specific content of an omission in quite as precise a manner.")

Sonn's argument that it was unreasonable for Kendalle to rely on Sonn's statements is a factual issue not properly decided on a motion to dismiss. Kendalle and KPG have adequately alleged that, over the course of several years, Sonn befriended Kendalle and gained her trust to the extent that Kendalle trusted Sonn unconditionally.  (*See* ECF No. 105, ¶¶ 52-56.)  The Amended Complaint alleges that, over the course of just three days, Sonn "pressure[d] [Kendalle], via oral conversations and written communications, to execute the SIAL," and "repeatedly expressed to [Kendalle] that she needed to hurry and sign the SIAL." (*Id*., ¶ 51.)  Most importantly, even if Kendalle understood the basic terms of the SIAL, this certainly does not equate to an understanding of whether or not its terms were fair, justified, and in the best interests of Kendalle and KPG.  As a financial advisor and fiduciary, it was Sonn's duty to explain financial matters to Kendalle and KPG.  Kendalle was entitled to rely on her fiduciary's explanation of the terms of the SIAL—indeed, Sonn preyed on this reliance to push forward her bonus.  In sum, Kendalle and KPG have plainly satisfied Rule 9(b)'s heightened pleading requirements.

Sonn's argument that her "opinion about her employment terms with KPG cannot be fraud" misrepresents the basic facts of the Amended Complaint.  (ECF No. 163, p. 20 at 8.)  Even if Sonn's statements above can be classified as "opinions," such opinions are actionable if "the person making the statement has specialized knowledge upon which another party is entitled to rely."  *Lui Ciro, Inc. v. Ciro, Inc.*, 895 F. Supp. 1365, 1376 (D. Haw. 1995).  Sonn, as Kendalle's financial advisor and as an officer of KPG, had specialized knowledge regarding what actions were in the best financial interests of Kendalle and KPG—indeed, providing such advice was the very purpose she was hired for these roles.  Kendalle and

1  KPG have plainly alleged that Sonn made numerous misrepresentations about
2  whether signing the SIAL was in the best financial interests of Kendalle and KPG.

3       Sonn erroneously claims that the existence of an express written contract
4  (the SIAL) precludes Kendalle and KPG's claim.  However, the case cited by Sonn,
5  *Rd. & Highway Builders v. N. Nev. Rebar*, 128 Nev. 384, 390, 284 P.3d 377, 381
6  (2012), merely stands for the proposition that an allegedly fraudulent oral
7  inducement "cannot be something that conflicts with the [contract's] express terms."
8  Specifically, in *Rd. & Highway Builders*, a plaintiff was barred from relying on a
9  "purported promise concerning the amount of rebar NNR would provide for the
10  Project, when that representation is at odds with the parties' agreed-upon
11  contractual terms."  128 Nev. at 389-390, 284 P.3d at 380.  Such a case concerning
12  plain objective terms of a contract is inapplicable to the instant matter, where a
13  fiduciary provides fraudulent recommendations to support her own personal interest
14  and financial gain.  Indeed, the fundamental misrepresentation made by Sonn—that
15  signing the SIAL was in the best financial interests of Kendalle and KPG—is not
16  contained anywhere in the contract itself.  Kendalle relied on Sonn's repeated oral
17  recommendations (external to the contract) that she execute the SIAL.  Sonn's
18  attempt to shift the responsibility to Kendalle ignores the Amended Complaint's
19  allegations that Kendalle relied on and trusted Sonn's recommendations.

20       Sonn's suggestion that Kendalle and KPG cannot maintain a fraud by
21  nondisclosure theory further ignores the Amended Complaint's allegations set forth
22  above.  Further, Sonn again relies on the business judgment rule, which is
23  inapplicable to Sonn's misconduct driven by her personal self-interest.

24       **E.  Kendalle and KPG State a Valid Claim for Negligent
25           Misrepresentation.**

26       In Nevada, "[o]ne who, in the course of his business, profession or
27  employment, or in any other action in which he has a pecuniary interest, supplies

McDONALD CARANO

100 WEST LIBERTY STREET, TENTH FLOOR • RENO, NEVADA 89501
PHONE 775.788.2000 • FAX 775.788.2020

false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information." *Barmettler v. Reno Air, Inc.*, 956 P.2d 1382, 1382 (Nev. 1998) (citing Restatement (Second) of Torts § 552) (emphasis added).

Kendalle and KPG have exhaustively explained how Sonn supplied false information.   To be clear, Kendalle and KPG's allegations support that Sonn intentionally misrepresented facts.   However, Kendalle and KPG's claim for negligent misrepresentation is likewise supported because Sonn, at a minimum, failed to exercise reasonable care or competence in doing so.

**F.     Kendalle and KPG Sufficiently State Grounds on Which to Rescind the SIAL.**

Kendalle and KPG's Fourth Cause of Action states several grounds on which the SIAL should be rescinded, including fraudulent inducement, unconscionability, and undue influence.   Sonn baselessly argues rescission and fraudulent inducement cannot be raised where an express contract exists based on *Rd. & Highway Builders,* (an issue that has been addressed in detail above).

Kendalle and KPG have alleged facts demonstrating the SIAL was unconscionable and thus unenforceable.   *See Burch v. Second Judicial Dist. Court*, 118 Nev. 438, 441, 49 P.3d 647, 649 (2002) (court may refuse to enforce a contract upon a determination that the contract is unconscionable); *see also D.R. Horton, Inc. v. Green*, 120 Nev. 549, 553-54, 96 P.3d 1159, 1162 (2004), *overruled on other grounds by U.S. Home Corp. v. Michael Ballesteros Tr.*, 134 Nev. 180, 192, 415 P.3d 32, 42 (2018) (procedural unconscionability occurs when a party lacks an opportunity to meaningfully review the terms, and substantive unconscionability is present based on the "one-sidedness" of the contract).   Specifically, the Amended Complaint alleges that Sonn was aware of Kendalle's stressful issues in her

McDONALD CARANO

100 WEST LIBERTY STREET, TENTH FLOOR • RENO, NEVADA 89501
PHONE 775.788.2000 • FAX 775.788.2020

personal life.  Sonn falsely claims that the Amended Complaint provides no further facts supporting this—in fact, the Amended Complaint specifies that these stressful events included the anniversary date of the death of Kendalle's close family member.  (*See* ECF No. 105, ¶ 48.)  Most importantly, Kendalle and KPG alleged that Sonn "pressure[d] [Kendalle], via oral conversations and written communications, to execute the SIAL," and "repeatedly expressed to [Kendalle] that she needed to hurry and sign the SIAL."  (*Id.*, ¶ 51.)

The SIAL, drafted by Sonn, was a $2.5 million transaction involving the personal funds of her fiduciary.  It would be expected that Sonn, as Kendalle's fiduciary, would ensure that Kendalle had sufficient time to review and understand the terms, and to ensure that Kendalle's legal counsel reviewed and approved the transaction.  Instead, Sonn pressured Kendalle to sign immediately and actively discouraged Kendalle from consulting her attorney.  (*Id.*, ¶¶ 44-45.)  Indeed, after the SIAL was signed, Sonn pressured KPG's treasurer, who was dying from a medical condition, to ignore his other duties (and his own health), and instead use his remaining energy to quickly process her payment.  (*Id.*, ¶ 59.)  The Amended Complaint demonstrates that Sonn, in a calculated fashion, leveraged her position to overwhelm all safeguards designed to protect Kendalle and KPG's interests.  These facts fully support rescission.

### G. Kendalle and KPG Sufficiently State a Claim for Contractual Breach of the Implied Covenant of Good Faith and Fair Dealing.

Sonn relies principally on her failed arguments addressed above, specifically, that she "fully disclosed" the terms of the SIAL.  As set forth above, Sonn's alleged misrepresentations were external to the contract.  Likewise, Sonn's assertion that no contract existed between Sonn and Kendalle ignores the fact that Kendalle was clearly a third-party beneficiary under the Employment Agreement.

McDONALD CARANO

100 WEST LIBERTY STREET, TENTH FLOOR • RENO, NEVADA 89501
PHONE 775.788.2000 • FAX 775.788.2020

Sonn's suggestion that the Amended Complaint fails to explain how Sonn circumvented the terms of the FIAL ignores the plain allegation that Sonn "breached the covenant of good faith and fair dealing implied in the [FIAL] by performing in a manner unfaithful to its purposes." (*See* ECF No. 105, ¶ 138.)  Specifically, Sonn "breached her fiduciary duties, misrepresented material facts to Kendalle regarding the [SIAL], concealed material facts that she had a duty to disclose to Kendalle, and circumvented the terms of the [FIAL] performing in a manner unfaithful to its purposes." (*Id*.)   The Amended Complaint thus plainly alleges that Sonn circumvented the FIAL by fraudulently obtaining Kendalle's signature on the SIAL.

### H. Kendalle and KPG Sufficiently State a Claim for Tortious Breach of the Implied Covenant of Good Faith and Fair Dealing.

Sonn suggests that Kendalle cannot maintain her claim for tortious breach of the implied covenant of good faith and fair dealing because Sonn had no fiduciary relationship with Kendalle.  As set forth above, this is false—Nevada law recognizes a financial advisor owes a fiduciary relationship to their client.  *See Perry*, 111 Nev. 943, 900 P.2d at 338; *Primiani*, 203 F. App'x at 904; *Hernandez,* 862 F. Supp. 2d at 1091.  Sonn thus provides no basis on which to dismiss this claim.

### I. Kendalle and KPG State a Valid Claim for Unjust Enrichment.

Sonn erroneously claims that an express written contract—the SIAL—precludes Kendalle and KPG's unjust enrichment claim.  Kendalle and KPG's unjust enrichment claim seeks to recover the $833,333 payment, which Sonn received pursuant to the SIAL, *on the basis that the SIAL is void and unenforceable* due to Sonn's fraud and breach of fiduciary duties.  Thus, the facts alleged by Kendalle and KPG, which must be accepted as true when evaluating Sonn's Motion, demonstrate that Sonn's $833,333 payment was not issued pursuant to any valid contract.  Rather, it was an overpayment of funds, fraudulently obtained.  These are the exact circumstances under which an unjust enrichment claim may be

McDONALD CARANO

100 WEST LIBERTY STREET, TENTH FLOOR • RENO, NEVADA 89501
PHONE 775.788.2000 • FAX 775.788.2020

maintained. *See Union America Mortgage & Equity Trust v. McDonald*, 97 Nev. 210, 212 (1981) (unjust enrichment occurs whenever a person has and retains a benefit which in equity and good conscience belongs to another).

**J.     Dismissal of Kendalle and KPG's Declaratory Relief Claim is Premature.**

Sonn raises no basis on which to dismiss the declaratory relief claim—she simply states this claim must be invalid because there are no grounds for recission. However, Kendalle and KPG have set forth the grounds for recission in detail.

Sonn has presented no valid reason for dismissal for any claims set forth in the Amended Complaint.  However, should the Court find otherwise, Kendalle and KPG respectfully request leave to amend to address any pleading deficiencies.

**IV.   CONCLUSION**

For the foregoing reasons, Kendalle and KPG respectfully request that the Court deny Sonn's Motion to Dismiss.

Dated:  May 14, 2024.

MCDONALD CARANO LLP

By: */s/ Daniel I. Aquino*
    Leigh T. Goddard, NV Bar No. 6315
    Daniel I. Aquino, NV Bar No. 12682
    McDONALD CARANO LLP
    100 W. Liberty St., Tenth Floor
    Reno, Nevada 89501
    Telephone: (775) 788-2000
    lgoddard@mcdonaldcarano.com
    daquino@mcdonaldcarano.com

    *Attorneys for Kendalle Getty and*
    *KPG Investments, Inc.*

**CERTIFICATE OF SERVICE**

I certify that I am an employee of McDonald Carano LLP, and that on the 14th day of May, 2024, a true and correct copy of the foregoing **DEFENDANTS KENDALLE GETTY AND KPG INVESTMENTS, INC.'S OPPOSITION TO MARLENA SONN'S MOTION TO DISMISS FIRST AMENDED COMPLAINT** was electronically filed with the Clerk of the Court by using CM/ECF service which will provide copies to all counsel of record registered to receive CM/ECF notification.

/s/ *Tracy L. Brown*
An employee of McDonald Carano LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

4873-2027-6411, v. 3